M’Kean C. J.
The question is, whether a feme covert seized of a real estate in fee, can in consequence of a power contained in articles executed between her husband and her before their marriage (the legal estate not having been conveyed to trustees) give away such estate by will, or instrument in nature of a will, during the coverture ?
The articles of the 29th June 1774, are therein called a deed tripartite, and the name of James Wallace is introduced into them as a party, along with Margaret Erwin and Matthew Henderson, and they are executed by all three; but no estate is thereby conveyed to James Wallace, as a trustee or otherwise. Margaret Henderson, during her marriage with Matthew Henderson, makes a disposition by an instrument, in nature of a will, of all her estate, real and personal.
It is very clear, that a feme covert by virtue of an agreement between her and her husband before marriage, may dispose of her personal estate by will or testament, because it is to take effect during the life of her husband; for if he survived her, he would be entitled to the whole, and therefore he alone could be affected by it. 2 Vez. 191. Peacock v. Monk.
It is also clear, that a married woman cannot devise her real estate. By stat. 34 and 35 Hen. 8, sect. 14, it is expressly enacted, that “wills of any manors, lands, tenements, “or other hereditaments, made by any woman covert, shall 1 ‘ not be taken to be good or effectual in law. ’ ’
It is further agreed, that if the legal 'estate in the lands had been vested by the deed, or articles, in James Wallace, the appointment by Margaret Henderson would be valid and good in equity, for then she would have had only an equitable interest; a confidence would have been reposed in the trustee, that he would make such estates as she should direct. Her will would have amounted to a direction which bound *225 his conscience, and which a Court of Chancery would enforce. 3 Vez. 193. 6 Brown’s Pari. Cas. 156. Powel on Contracts, 67.
But in this case Margaret Erwin, or Henderson, was the donor, and also the donee of the power; and, it is contended, that she could not 'execute it during her coverture, because the * fee still remained in herself, and she was restrained by the statute of Hen. 8, from making a will; and, by the maxims and rules of the law disabled, having no will of her own.
The instrument of 1790, executed by Margaret Henderson, being then covert, is not strictly a will, but distinct from it, though in nature of a will. It takes its effect out of the articles, or deed of 1774, which created the power to make such instrument, and was made in execution of such power. She takes notice in the preamble of it, that she was a married woman, and that as to what she was legally entitled to dispose of, her will was as is therein mentioned. It is usually called an appointment.
A feme covert can execute an appointment over her own estate. Powel on Powers, 34. 3 Atky. 713. The reason, or ground of a wife’s being disabled to make a will, is from her being under the power of the husband, not from want of judgment, as in the case of an infant, idiot, &c.
Matthew Henderson and his wife, before their marriage, agreed, that her real estate should remain her property, and might be disposed of by will and testament in writing by her, as she should think fit, as absolutely as if the said marriage had never been solemnized. The intention of the parties is plain, and admits of no doubt. She has, accordingly, disposed of it by an instrument in nature of a will and testament, in execution of the power, and by the express consent of the husband, not to him or his relations, but amongst her own nearest of kin. No fraud, force, flattery, or improper use of the power he had over her as a husband, has been exerted, nor is it alleged. This will bar him of any title to her estate, and why should it not bar the heir at law, in equity and reason ? Here was a fair and lawful agreement between them, founded on a valuable and meritorious consideration. Mrs. Henderson, with her husband, could, during the cover-ture, have given away her real estate by fine or deed, (if she had been secretly examined, agreeably to the act of assembly of Pennsylvania,) conformably to their agreement; and, if he had refused to join with her, a court of equity, (if such a court had existed here,) would, on her application, have compelled him to carry their agreement into execution. It is a lamentable truth, there is no court clothed with chancery powers in Pennsylvania; but equity is part of our law, and it lias been frequently determined in the Supreme Court, that the judges will, to effectuate the intention of the parties, consider that as executed, which ought to have been done. This is also a rule in the Court of Chancery in England.
*226 Why may not her articles of agreement, or deed of 1774, be * considered as a covenant to stand seized of her r*227 real estate for the uses therein specially mentioned, L and also to the use of her will or appointment? Marriage, which tends to join the blood, is one of the considerations held sufficient to validate such a conveyance. Why should she not have a right, in equity, of disposing of her lands, as incident to her ownership? For she is to be taken, as to the execution of this power, as a feme sole. If the intention of the parties cannot take place by this deed and appointment, in the common way of their operation, they may be considered good in some other way, and the substance, and not the form, ought principally to be regarded. Why may not this case be considered, under all its circumstances, of equal operation as a deed executed by the husband and wife, in her life time, to the use of the persons named in the appointment? The Court of Chancery will supply forms, where there is a meritorious consideration. It has gone as great lengths as is desired in the present case; and, I am glad to find the last cited case, determined there, to be in point,— “that there is no difference between a legal and an equitable ‘ ‘ interest. ’ ’ Ambl. 565. Rippon v. Dawding, decreed- by Ed. Chancellor Camden, in 1769.
The spirit of the case Wright v. Lord Cadogan et al. in 6 Brown’s Pari. Cas. 156, also implies this doctrine. From all the circumstances of this case, taken together, I am of opinion the appointment of Margaret Henderson passes this estate in equity, and that judgment be given for the defendant.
Shippen, J.
I must confess when this case came first to be argued before us, I was of opinion against the defendant. The old distinction between trusts and legal estates, as to a wife’s power of appointment in pursuance of marriage articles, struck me forcibly. Upon a more deliberate consideration, I now think otherwise; and that a court of equity, under circumstances similar to 'the present, would decree a specific execution of the instrument executed in nature of a will. The legatees of Mrs. Henderson cannot, with propriety, be considered as volunteers. The case of Rippon v. Dawding fully establishes 'the right of the defendant, and settles the doctrine on the principles of sound sense. That decision appears to me perfectly consonant to the genius and spirit of the laws of this government; and I am happy to find the authority of the case is now established. I concur in opinion, that judgment be given, in both actions, for the defendant.
Yeates, J.
If the present question, respecting the validity of the will, or appointment of Mrs. Margaret Henderson, came be*fore us as a mere court of law, these could be little [-*228 doubt in the case; for it is contrary to the statute of 34 L and 35 Hen. 8, cap. 3, that a feme covert should make a will. The statute declares that such wills shall not be good in law.
*228 In the case of the lessee of Thornbury v. Dew, (vide 2 Brown’s Chan. Rep. 383,) determined in C. B. on a case made, Lord Chief Justice Willes says, (Ambler 628,) “At law, the “husband may give his wife, by articles before marriage, a ‘ ‘ power to dispose of her personal estate, because by marriage “he hath the sole property in, and power over it; but it is “ otherwise of lands of inheritance belonging to the wife, and “he cannot give her such a power to make a will, in preju- ‘ ‘ dice of her heir at law. ’ ’
We are not however to judge of this case by these strict rules. Equity forms part of the law, and to prevent a failure of justice, there being no court of chancery, this court has adopted, in a variety of instances, the chancery decisions. Such was the case in Pollard v. Shaeffer. Dallas 213, 214. Galbraith’s lessee v. Scott, and many others.
A rule has long been adopted in courts of equity, that “what ought tobe done, shall be considered as being actually “done.” 3 Wms. 215. And though this court cannot compel the specific execution of an agreement, they will, in certain instances, consider articles of agreement to convey lands, as a convejmnce executed, where the covenants on the part of the vendee have been fully complied with. The reason of this rule applies most strongly in the case before the court, for there was no competent jurisdiction within the government, to which Mrs. Henderson might have applied, during her second intermarriage, to have enforced her husband, Matthew Henderson, if reluctant, to join with her in a conveyance of these lands, agreeably to the terms of their marriage articles; no laches therefore in this particular is imputable to her.
In the case of Peacock v. Monk, 2 Vez. 191, Lord Hard-wicke doubts, whether a feme covert can convey her real estate, but either by way of trust, or of power over an use, but not by bare agreement, which can only bar tenancy by courtesy, unless perhaps it is such as would be decreed to be carried into execution.
Lord Kenyon, in the case of Hosden’s lessee v. Staple, in 2 Term Rep. 695, in speaking of the opinion of Lord Hard-wicke, says, ‘ ‘ That which was then considered as a doubt, “no longer remains so. Eor in Wright v. Lord Cadoganand “others, it was determined, that a court of equity would ‘ ‘ compel the heir to make a conveyance to the party in whose “favour such an agreement was made. That point was very *2291 '* abl7 discussed in * the House of Lords, on the doubt J “which Lord Hardwicke had thrown out in Peacock “». Monk, though his doubts were not sufficient to induce ‘ ‘ the house to determine against such an agreement. ’ ’
The case of Wright v. Lord Cadogan et al. and Lord Nottingham’s decree on the 13th November 1764, is reported in Ambler 468, and the arguments of counsel and affirmance of *229 his decree in the House of Lords, on the 8th December 1766, in 6 Brown’s Pari. Cas. 156; in Powel on Contracts 67, and in his late edition of Wood’s Conveyancing, vol. I, pa. 467.
In Ambler 565, Rippon v. Dawding, called in Powel on Contracts 73, Rippon v. Hawden, and in 2 Brown Cha. Rep. 539, Rippon v. Hardy, determined by Lord Cambden on the 22d November 1769, occurs, which fully meets the case before the court. There a widow being seized of a freehold estate, her second husband, previous to their marriage, gives a bond, empowering her to dispose of her real estate by deed or will, notwithstanding her coverture. No settlement appeared to have been made on the occasion, nor any other transaction passed but the bond. The wife afterwards, by will, gives her estate to her younger children in fee. On a bill brought by the younger children against the daughter (being the only child,) of the eldest son, to have a conveyance of the estate, it was objected, that the case differed materially from Wright v. Lord Cadogau. In that case the legal interest was in trustees; in this, the legal interest remained in the wife, and nothing passed by the devise, and that this -was a mere question between volunteers. Lord Cambden said, the agreement was made on marriage, and it was not a question between volunteers. The wife might have compelled the husband to have joined with her in a fine, though the wife had only an equitable interest in the one case, and the legal interest in the other, yet the principle of the determination is the same in both; equity follows the law. A conveyance was therefore decreed.
It must be confessed, that the principles of this decision are somewhat impugned by Lord Thurlow in Hodsden v. Lloyd, and é contra, (2 Brown’s Cha. Rep. 534,) determined in 1789. The case of Rippon v. Hardy, as it is called, is cited by counsel, pa. 355, but the chancellor does not mention it. In pa. 544, he is made to say, “ With regard to chattels, both real “and personal, the husband, by contract, anterior to the mar“riage, resting only in agreement, could authorize her to “make a*will; but in order to make a will of real estate, he ‘ ‘ must part with the legal estate to trustees; for by agreement, “whilst resting in agreement * only, he cannot bind r*ooA ‘ ‘ the heir, but can only bind himself, and the legal L ‘ ‘ estate ought to be conveyed by legal conveyances. ’ ’
Mr. Powel, in his late edition of Wood’s Conveyancing, (a work of considerable merit, but which is not yet fully completed, ) seems to discard the doubt he had entertained of the resolution in Rippon v. Hawden, in his Treatise on Powers, pa. 73, by subjoining a qticcre.
In vol. I. pa. 467, of this late work, (Wood’s Conveyancing,) he says, ‘1 It was formerly doubted, whether marriage was not “ such a suspension of the capacity of the wife to execute any ‘ ‘ effective conveyance of her property, as deprived her of the *230 “power of assenting to any alienation even of real estate, “under settlement to her separate use, unless through the ‘ ‘ medium of a power, or by the interposition of a fine. But “it is now settled, that a wife has a capacity by her consent, “of making a valid contract as to her separate estate; and 11 that therefore a mere covenant or agreement between a “woman and her intended husband, inserted in marriage ar- “ tides, that she shall have power to dispose of her real es- ‘ ‘ tate, without any estate being vested in trustees, out of ‘ ‘ which an appointment, by virtue of the power, may enure, “will bind her heir, not only when the power attaches upon ‘ ‘ a trust, but likewise when it is applicable to a legal estate. ’ ’
“This was settled as a trust in the case of Wright v. Eord ‘ ‘ Cadogan and others, ’ ’ which he proceeds to state very fully with all its circumstances.
He then adds, pa. 468, ‘ ‘ But the case of Rippon v. Haw-“den, 23d of November 1769, which was attended with none ‘ ‘ of the particular circumstances that occurred in the former “ case, settled this point in favour of a covenant, in case of a ‘ ‘ legal as well as of a trust estate. ’ ’
And he then states the case and decree.
If this adjudication is considered as a rule of decision, it puts an end to the present controversy. And what solid, substantial distinction, is there since the stat. of 27 Hen. 8, cap. 10, between an equitable interest in an use, and a legal estate ? At common law cestui q^t,e use had no power over the land, though he might alien the use. (Gilb. Raw of Uses, 26.) But the stat. of 27 Hen. 8, c. 10, executes the use; that is, it conveys the possession to the use, and transfers the use into possession, thereby making ceshci que use complete owner of the lands and tenements as well at law as in equity. (2 Black. Com. 333.) Courts of equity now consider trust estates as equivalent to the legal ownership, governed by the same rules of property, and liable to every charge in equity, which the *2311 ot^er subject to law. *(3 Blackst. Com. 337.) ■1 Trusts are to be governed by the same law, and are within the same reason as legal estates. Per Ed. Cowper; (2 P. Wms. 713) and Sir Joseph Jekyl in the same page says, that trusts and legal estates are to be governed by the same rules, is a maxim which has obtained universally.
Upon the whole, I think on principles of equity, the appointment of Mrs. Henderson, in pursuance of the marriage articles, will well operate on the lands in question, and that judgments should be entered in both suits for the defendant.
Bradford, J.
In this case, the legal estate is clearly vested in the plaintiff. The instrument under which the defendant claims is void as a will, and the articles do not at law raise any estate upon which it can operate as an appointment, or as the execution of a power. But it is said, a Court of Chancery *231 would relieve the devisees, and on a bill filed against the plaintiff, would compel him to convey to the defendant.
Here it must be premised, that with regard to equitable relief, this court exercises only a borrowed jurisdiction. It was established'at first as a mere court of law; but necessity has obliged the judges to adopt the maxims and principles of a court of equity among the rules of their decision. This necessary assumption of power seems now to be sanctified by the constitution, which recognizes “the powers heretofore ‘1 usually exercised by them. ’ ’ That which is an established rule of property in equity, must therefore be considered in Pennsylvania as such at law; but I think they ought to be settled and established rules before we adopt them in any case.
Prom the authorities already mentioned, it appears to me, that it is now an established rule in equity, that articles ex-ecutory will raise a power to a feme covert over an estate, legal or equitable, as much as a conveyance executed. Whatever doubts I entertained at first of the authority of Rippon v. Hawdin, they have been removed by the full examination which Powell in the passage cited by Yeates J. has given it; and his declaration, that the doctrine it contains is now considered as a settled point. To this may be added the uncon-tradicted assertion of the attorney general, in Hodsden v. Ployd'(2 Brown’s Cha. Rep. 540) that there is no distinction as to the power of a feme covert, whether the estate be a legal or a trust estate.
But admitting the authority of that case, it is said, that the devise there was to children, who are never considered as volunteers; but that this is a voluntary disposition, and that chancery will not in such case compel the heir to convey. Considerations of this kind weighed with Pord Northington in Wright * v. Cadogan (Ambl. 474) who distinguishes r*032 it from Bramhall v. Hall, by observing that the ap- L pointment was to children and therefore meritorious. They are also hinted at by Justice Buller in Compton v. Collinson. (2 Brown’s Cha. Rep. 388.) But it is plain, that this formed no part of the principle which governed Pord Camden’s decision. He lays no stress on the merit of the appointment, and regards only the consideration of the agreement; and the object of the agreement being to vest a power of disposing of her estate in the wife, that object ought to be supported against the heir as much as against the husband. A defective appointment will not be supplied, unless it be what is called a. meritorious one; but the question before us relates not to the formality of the appointment, but to the creation of the power; and the articles intended to raise that power are founded on the best of considerations.
The last difficulty which occurs is, whether these articles are to be considered as executory articles, within the meaning *232 of the cases cited. Where the husband covenants to make a settlement or conveyance, which, if made, would give the wife a power over her estate, the rule ‘ ‘ of considering that ‘ ‘ as done, which is agreed to be done, ’ ’ has a force, which it has not in the case before us. In Wright v. Cadogan, the husband covenanted to execute conveyances in trust, and these if executed, would have raised a power in the manner the law prescribes. Rippon v. Hawdin is imperfectly stated, but it is said, the husband covenanted to 1 ‘ impower his wife • to dispose of her estate. ’ ’
Cited in io S. & R., 447.
Cited in ix S. & R., 117, in support of tlie proposition that an established rule of property, in equity, must be considered as such at law. Cited for the same purpose in 12 S. & R., 376.
In the articles before us, the husband and wife do not covenant to do any thing. They discover no intention to convey the estate, so as to create a trust, or raise an use, over which she might have a power. It is a mere agreement, that the wife shall have a power to dispose of her estate, notwithstanding her coverture, without attempting or intending to do any thing further, in order to raise that power.
The question therefore is brought to this, whether the mere consent of the husband can give the wife such a power? Upon the best consideration I can give the subject, I am of opinion, that where that consent is anterior to, and in consideration of marriage, it will raise a power without more. The expressions of Powell are full to this point. He says “ it is “now settled, that the wife may acquire a capacity to dispose “of her property by a mere covenant or agreement between “her and her intended husband, inserted in marriage articles, “that she shall have power to dispose of her real estate.” This is putting the doctrine upon broad and liberal ground. I see no reason why a woman, when she is sui juris, may not by such an agreement * reserve the rights of a feme sole over her property after marriage; nor why the consent of her husband to waive the marital rights, should not give her such a power over real as well as over personal estate. It is easy to foresee the consequences of this decision; but it seems fully justified by the later authorities, and I am perfectly satisfied with the justice and policy of it.
Judgment pro def. per totam curiam.