The opinion of the court was delivered by
Duncan, J.
The great change introduced by the act of assembly, rendering real estate subject to judicial sale, for payment of debts, and the necessity imposed on our courts, from the want of direct chancery jurisdiction, of considering every equitable, tangible interest in land, subject to levy and sale, produce, frequently, consequences which call for a liberal exercise of equitable powers, ■accommodated to this new state of things.
I will consider the special errors .assigned, in the following order.- 1st, Whether any breach of covenant entered into by the"*" grantor, had occurred, so as to render him liable to any action, without some evidence of direct, actual damages; and 2d, Whether the plaintiff, without having laid' any consequential damages, could give any evidence of them — and’ this will dispose of the whole case.' The words, grant, bargain and sell, by the operation of law, and the express words of the act,of assembly, are a covenant against incumbrances done or suffered, by the grantor; in other words, that the estate was not defeasible, by any act done by him. The action is brought on this covenant. Now, this covenant was *112 broken the very instant it was entered into. The special covenant is by no means inconsistent with this general covenant. The implied covenant is not controlled by the special one — the effect of the words grant, bargain and sell, .can only be limited “ by express words contained in the deed.” Such is the direct provisión of the act. There is no express limitation; and to imply one, would be contrary to natural justice, and the intention of the parties. It is an unqualified covenant against incumbrances done and suffered by the grantor, or those under whom he claims ; nor can it make any difference, that the mortgage was recorded, and the plaintiff had, therefore, constructive notice. It is no answer to his complaint, t.o say, it was his duty to search the record, and to have protected himself by some special covenant, against this specific incumbrance. It was no part of this case, that he had actual notice; but if he had, it could make no difference.
The plaintiff covenanted against all incumbrances. The rule as to the vendee, is caveat emptor. So, let the vendor take cafe of the covenants he enters into. There was no special stipulation on the subject, and the plaintiff might safely rely on the general one. Notice of the mortgage would make no difference, as was determined in Levit v. Witherington, 1 Lutw. 317. In an indenture reciting a lease, where the party covenanted, that the original lease was good and unincumbered, on action of covenant, alleging an incumbrance, notice of it was pleaded, and on demurrer, the plaintiff had judgment. An action on the case, for deceit, would, I apprehend, lie, if there was no covenant, the incumbrance being concealed. In that action, notice to the grantee would be decisive in favour of the grantor; but it cannot alter the case in this action of covenant. The mortgage here was a subsisting incumbrance; the covenant was, therefore, broken; an ouster or eviction, was not necessary. An allegation of a breach as wide as the covenant, was sufficient to entitle the plaintiff to nominal damages; and the defendants, by pleading covenants performed, have admitted the existence of the incumbrance. A mortgage, though there can be no recovery on it, until a year after last instalment becomes due, is a present incumbent weight on the inheritance, from the moment it was given. The law on this subject is laid down with precision and accuracy, in the very able judgment of Chief Justice Parsons, in Prescott v. Truman, 4 Mass. 630: “If a mortgage-is the incumbrance, it being only a collateral security, the grantee can only recover nominal damages, unless he has removed it, because the mortgagee can compel the mortgagor to pay the debt, which is the principal security; but, if the grantee has paid it, so that the mortgage is discharged, the sum secured by the mortgage is the measure of damages.” Aud I am of opinion, that where the mortgage money is not due, but the grantee chooses to pag it, th.- jury ought to allow him the fair price it necessarily cost him; for it would be a most inconvenient doctrine to hold, that the vendee was to wait *113 ten years!, until the last instalment became due, and the vendor a beggar. But whether the plaintiff paid it or not, still he was entitled to nominal damages — the covenant, was broken. The mistake consists in supposing the eviction to be 'the breach of covenant; whereas, it is but a consequence of .the breach; the breach was an immediate one. The existence of the incumbrance was the breach; consequential damages arose from the eviction; but cause of action from the-.incumbrance; and here was the error of the learned judge, whose opinion was, “ that if no suit was brought, nor damages sustained, he was -not damnified By any breach of covenant; the action ivas brought too soon. He could- not support a suit of this kind until some damage was actually sustained; and until he was put to trouble by it from default of defendants,- in Uot discharging the incumbrances as they arose, he cannot complain of the covenant; and the mortgage being a record, was notice'to all the world; it was the plaintiff’s duty to search the record, and he might have protected himself by special covenants, and as he had not done so, he could not sustain his action.”
On the second head of inquiry, it is to me evident, that if the plaintiff had laid the consequential damages he offered to prove, the evidence should have been received; but as they were not laid, and not Confessed by the plea of covenants performed, it is as evident, the evidence was properly overruled. If he had- discharged the mortgage, this ought to have been stated'as the actual gravamen. So, if by a judicial sale he had sustained, as was alleged, the ultimate damages which he ever could sustain,- this gravamen ought to have'been laid. This is a ne\V consequence, arising from the liability of lands to sale for payment of debts. There being no Court of Chancery to which the grantee could apply for relief; and as he would be remediless, unless he,could recover in this action, we must apply the rules of equity^ to this state of things, urn-known to the common law. It will- not do to wait until the day' of payment arrives, or until it pleases the mortgagee to proceéd. The mischief is done already; he’ has sustained the ultimate damages he ever can sustain. The purchaser at sheriff’s sale,- as his assignee could Support no action, as,on a covenant running w'ith the land; he has sustained no injury; and this, even on the reason of the common law. The grantee ought to recover all the actual damages hé has sustained by the grantor’s violation of his covenant, because the very sale is a consequence of the incumbrance. If there is a judgment against him for the smallest sum, insufficient to condemn his lands, by taking in the mortgage, which is a reprisal, if due. within seven years, his land is condemned, and sold by means of this very incumbrance; sold for l'éss, minus the mortgage money. Is not this an actual damnification to this amount, occasioned by the breach of covenant? if it was a judgment with stay of execution, and the lands sold on-a judgment against grantee, and the prior judgment against grantor, paid out of the proceeds of the' *114 sale, this is a damnification. So here, by the operation of law, a consequential damage arises from the delinquency of the grantor; in reality the plaintiff has sustained every possible damage he can sustain — he never can suffer more. It is th.e same thing to him as if the land had been sold on the mortgage, given by the grantor. The equity of this case is, to award to the plaintiff the fair, present value of the mortgage. In making that estimate, interest will be deducted for the nominal sum, as the instalments become due; and if there are any bonds outstanding, though not due at the time of action, or at the trial, deduct the interest until they become due, setting them off, and thus justice will be done all round. The weight of this incumbrance lessened the value of the land to this amount, for, instead of the full price of the land being received by the plaintiff', the purchaser holds it back to pay this incumbrance. No action could be maintained by the purchaser, because the covenant being broken, it was a chose in action not assignable. 2 Johns. 1. 2 Mass. 455, But if this was a continuing covenant, running with the land, the assignee could maintain no action. He had sustained no damage. The damage had been sustained to the full value of the covenant at the sale. A breach might have been assigned to cover the whole damages. The case of Ancestor and Heir resembles this: when the ultimate damage is sustained in the life of the ancestor, and the land does not descend to the heir, the covenant which runs with the land, does not descend to the heir; therefore, the executors shall recover the whole ultimate damages. Lucy v. Levington, 1 Vent. 175. 2 Lev. 26. It seems to me to follow, even on principles of law, that the plaintiff is entitled to recover all the damages he has actually sustained, which is the full value of the mortgage. The leading decisions, English and American, will be found in a valuable note of Mr. Wheaton, to Duvall and Craig, 2 Wheaton, 6-2. 'On the whole of this case, my opinion is, that the charge of the court was erroneous, as the plaintiff had a cause of action,- without proof of actual damage, on the breach which instantly arose, at least, for nominal damages. And although the grqund is untrodden, it is the opinion of my brother Gibson, as well as myself, the Chief Justice giving no opinion, not having been present at the argument, that the plaintiff, by assigning specially the consequential damages arising from the breach of covenant, according to the evidence offered by him, stating that the land was of less value, by reason of the incumbrance, and that he was prevented from selling it, as advantageously as he might have done, and that in fact, it was sold by process of law for so much less, would be entitled to recover the full value of the mortgage. Whether a grantee could not, by calling on the grantor to remove the incumbrance, recover this value, where there had been no sale, no eviction, and even before the mortgage money became due, is another question, which it is not necessary now to decide. But in tracing this doctrine, both in courts of law and equity, it is by *115 no means clear, that in our mixed administration of law and equity, he ought not. It would be very inconvenient if he should not. Transfers of land are so very frequent; lands are so continually changing owners ; the policy of our laws is s.o much in favour of removing every impediment in the way of alienation, and the hardship is so great on the grantee, who is entitled to the full benefit of his covenant, that I would feel á strong desire to relieve him, if by analogy to any principle of the common law, or any rule of equity, it could be done. For the grantee to wait until he is evicted, locks up all property; suspends all improvements; for who would be willing to make improvements, and wait till he is evicted; and when he, viz: the grantor, may be unable to make, any compensation. The arguments ab inconvenienti, are unanswerable. And why should he not be obliged, immediately, to perform his covenants ? If the buyer does not take a covenant, the rule of law is caveat emptor; let the seller then take care not to enter into this covenant.
In the antiquated action of warrantia chartse, the good old common law contained some provision. A warrantia chartse lay before any impleading, but the writ supposed an impleading. A man rqight have warrantia chartse quia timet irriplicari, and recover pro loco et tempore, but no execution Would be awarded ; but if he be ousted after, he shall have his warranty on his first recovery; but it seems in that case he shall make request to the warrantor pending, the assize to administer a bar. 22 Viner, 421. Warrantia Chartæ, F. pl. 1. Fitz Na. Brevium, 134. K. Roll v. Osborn, Hob. 22. Co. Litt. 100. a. And if the defendant appears and says he is not impleaded, he by this plea .confesses the warranty, and the plaintiff shall have judgment to recover his warranty. Fitz. N. B. 134. K. Fitzherbert there says, ‘1 It is to be observed, moreover, that it is good policy if a man suspects any thing to bring this writ of warrantia chartse by times, because it binds all the lands of-the warrantor, from the time of the writ brought. There is a very strong, and substantial reason .why the writ of quia ti-met should issue before impleading. A warrantia chartse or writ of mesne may be brought before the party take loss. Crookhay v. Woodward, Hob. 217. A writ of warrantia lies before damages, and recovery pro. loco et tempore. ' Br. Petition, pl. 26. cites 5 Ed. 4. 118. All the ancient curious learning on this subject will be found in Lynn Corporation v. London Corporation, 4 T. R. 130. Suits quia timet, are proper both in law and equity. It is at law, if a warrantia chartse. In equity where A. had mortgaged the manor of Guildford for 4Í 2500, and then devised to B. for life,-.remainder to C. in fee. C.,preferred- his bill to force B. to pay his-share of the mortgage money, and decided accordingly, and there have been twenty cases since of the like nature. Ch. Cas. 223. Hayes v. Hayes. So, in Ranelagh v. Hayes, 1 Vern. 189. Covenant to save harmless, and on cause shown, a decree to clear the earl of Ranelagh from all incumbrances within a rea *116 sonable time; and tho lord Keeper compared it to a cautionary bond, where although the surety is not troubled or molested for the debt, yet at any time after the money became payable on the original bond, the court will decree the principal to discharge the debt, “ it being unreasonable that a man should always have such a cloud hanging over him.” So before day of payment, by-sir Thomas Fowls, arguendo. Gilb. Eq. Rep. 69. Contract was to save harmless from payment of rent to the crown. Plaintiff suggested he was sued in the Exchequer, but it.was not charged in the bill here, or proved there, that the rent was behind, yet the court decreed it in specie, and the master to tax the damages. Hayes v. Ranelagh, 3 Ch. Cas. 146. Any covenant though not specific, but only a general personal covenant for indemnity, will be decreed in chancery, for equity prevents mischief, and it is unreasonable a man should have a cloud continually hanging over him; yet it seems that where the incumbrance is not necessary, but contingent you should recover no damages at law till a breach, and therefore ought not to. decree it in equity. Gilb. Eq. 5. Mosely, 318. J. Fonbl. 41. Chancellor Kent in Champion v. Brown, 6 John. Ch Cas. 406, states it as a general principle, that equity will decree the performance of a general covenant of indemnity, though it sounds only in damages, on the principle of billa quia timet, and in that case tho chancellor decreed specific performance, though no damages had been sustained, merely a probability that there afterwards might be. Here this incumbrance of the mortgage is not contingent; it is certain, and here is a breach of the covenant. It is a maxim in that count, that equity prevents mischief. Francis Maxims, Max, 8 and Fonbl. ut supra. The prevention of mischief which should be one of the principle objects of our system of jurisprudence, constitutes a very important part of equitable jurisdiction. With a view to this object, courts of equity entertain suits quia timet. The very denomination of this bill was probably borrowed from the title of some ancient writs of common law, for as Sir Edward Coke observes, Co. Lilt. 100, there be some writs of law that may be maintained quia timet, before any distress, molestation, or impleading, and then he mentions a warrantia chartse, before he be impleaded, and these may be called brevia anticipantia, or writs of prevention. The general principles of these bills, are said to embrace every case. “ Where a person is apprehensive of being subjected to a future inconvenience, probable or even possible to happen or be occasioned by the neglect, inadvertence, or culpability of another, he. may exhibit this bill quia timet, which will quiet the parties apprehension of future inconvenience by removing the causes which lead to it.” 1 Madd. Ch. 318. Now as chancery would compel the execution of these covenants in specie, on a bill quia ti-met, and as at the common law, some provision for security, even on suspicion, is given, before any breach or uny eviction, I must *117 confess, ibappears to me but reasonable, to give the relief in our courts, by substituting the value of thé incumbrance, for the specific performance, which is a course very common in our courts. Here the common law is adapted to the general regulation of the transactions of man ; its principles all tend to that end. If great inconvenience will result from one decision, which may be avoided by a different course, and if pursuing that course, no principle of the common law is infringed,( so far .inconvenience ought to affect the mind of a judge. Plere the inconvenience is not only great, but the injury is irremediable. Every day new cases arise, and are dete'rmined on their own reason. The doctrine, that in an action of covenant, on a covenant such as this, no more than nominal damages shall be given until eviction or a payment of the incumbrance, can produce but little inconvenience where there is a Court of Chancery, as the party may go into court, and by his bill quia timet, cause 'the vendor to remove the incumbrance. But here, where there is no such remedy, the reason which first introduced chancery principles, and chancery relief into our courts could in no case hold stronger than in this; necessity, lest there should be a failure of justice. Equity is now part of the law of the land, recognized not only in all courts of 'justice, but by the legislature, for arbitrators are sworn. “ justly and equitably to try the matter in variance,” and although it was originally but a borrowed jurisdiction, necessity has obliged the judges to adopt the maxims and principles'of a court of equity among the rules of their decisions, and this necessary assumption of power is sanctioned by the constitution, which recognizes the powers heretofore usually exercised by them. That which is an established rule of property in equity, must therefore be considered as such, at law, in Pennsylvania, says Bradford, Justice, Lessee of Barnes v. Hart, 1 Yeates, 231. At the common law the party has a ground of action immediately on the covenant. It is but a question of mere damages. “ What shall be the measure of the damages V’ And I have but little difficulty in saying that the measure of damages is the full amount of the incumbrance. So that no principle of the common law is infringed; it is but an adaptation of the writ of warrantia chartm, and its principles to the action of covenant; and this by fair analogy to the common law, and the application of its principles to its substitute, the action of covenant, the ultimate damages may be immediately recovered. If the purchase money had not been paid, but bonds given, on the plea of payment with leave, the obligor could set up these incumbrances; the amount wóuld-be deducted from the bond, and this because the vendor' ought to have discharged. them. By parity of reason where he has paid the purchase money, he ought to recover back the amount of the subsisting incumbrance. Equity in the first case, would enjoin; equity in the second case, would decree specific performance of the coyenant, quia timet, before actual damnification. The same *118 train of reasoning ought to produce thesame conclusion in both cases; that courts of law should relieve, lest there should be a failure of justice; should exercise equity powers ex necessitate in this form of action. In the construction of onr system of law, the principles of natural justice ought first to be considered. The wisdom of legislators in framing positive laws to answer all the purposes of justice has ever been found unequal to the subject; and therefore, in all countries, those to whom the administration of the laws has been entrusted, have been compelled to have recourse to natural principles to assist them in the interpretation and application of positive law, .and to supply its defects; and this resort to natural principles has been called judging by equity. Hence a distinction has arisen in jurisprudence between positive law and equity ; but the administration of both, has in most countries, been left to the same tribunal; indeed the decision by separate tribunals seems peculiar to English jurisprudence, followed by many of the United States; in the Supreme Court of the United States, happily by giving the court an equity and a law side, conferring all the benefits without any of the inconveniences, expense, and delay, with which a Court of Chancery is charged. In prescribing forms of proceedings to courts of justice, human foresight has also been defective, and therefore it has been commonly submitted to the discretion of the courts themselves to vary or add to established forms, as occasion and the appearance of new cases have required. The common law courts, though admirably calculated for the ordinary purposes of justice were found not adapted to the full investigation of all the intricate and complicated subjects of litigation, which are the result of the increase of commerce, of riches, and of luxury, and the consequent variety in the necessities, the ingenuity and the craft of mankind. To supply these defects the courts of equity gained an establishment, assuming the power of enforcing the principles of natural justice, (which the ordinary courts also decide,) where the powers of those courts and the modes of proceeding are insufficient, and of deciding on principles of universal justice, where the interference of a court of judicature is necessary to prevent a wrong, and the positive law is silent. The principles of those decisions is considered by these courts as rules to be observed with as much strictness as the precepts of positive law, and though it is difficult in some cases, and impossible in many, for our courts, proceeding according to the maxims and form of the common law, to reach all the benefits of the extraordinary jurisdiction of the courts of equity, yet the inherent constitutional powers of the court, are developing every day, and all the faculties of the mind employed in adopting rules of equity and accommodating them to common law forms; and it is no good reason why we should not do any thing, because we cannot accomplish every thing.
I only throw this out for consideration; it is extrajudicial, though not foreign to the question under consideration. The ge~ *119 neral ground of going into eqnity (as distinguished from law) is the want of remedy at law, and it is truth that the rules of law and equity are in a great measure the same. Perhaps it may be added that there is but this single rule in both, to do complete justice according to good faith and the sober intention of the parties in the matter transacted. Winners Dialogues, 301. In common understanding, in valuing the.interest of the, plaintiff in this land, this onus put. on it by the defendant’s testator, is a deterioration equal to the - amount of the mortgage, is a, deterioration and damnification of his estate to that-amount, and is in substance as much an actual'damagé as if he had discharged the mortgage, or been evicted. I have thought it necessary to notice this at some length, because if it were omitted, it might lead to some misapprehension, that the-decision was, that the plaintiff could not recover effectually, unless there was an eviction, a judicial sale, or he had discharged the mortgage, which the court do not mean to give any binding opinion upon. It is the policy" of the law to give redress to those only who are aggrieved. The plaintiff must state, in order to recover damages, the injury, and the, manner. Here it would seem he could state specific injury and specific damages.
Judgment reversed, ,and a venire facias de novo■ awarded.