The opinion of the court was delivered by
Gibson, J.
On the facts found, I should be unable to determine whether the deed of trust be void for want of notice, the jury not having passed on the existence of notice at the date of the bond of indemnity, when the contract was new modelled, which, therefore seems to be the time material to the question; or whether the interest of the elder Mr. Chew.under it, if any existed originally, ought to be postponed in consequence of the acts of the younger Mr. Chew, who was his agent. Haply a solution of these questions is unnecessary, as independently of his supposed rights under the deed of trust, and independently of the effect of the judgment against the administrators of Mr. Nicklin, which undoubtedly created no lien in addition to that which before existed under the intestate acts; the defendant, Mr. Chew, has a personal interest in the event which ought to be protected in this suit.
Divested of unnecessary circumstances, the case is just this: Mr. Chew and Mrs. Nicklin are the personal representatives of Mr. Nicklin, who is dead, intestate, and indebted, as the partner *204 of Mr. Griffith, in a large sum to the elder Mr. Chew, and ire another large sum to Captain Sims: and having left a separate real estate as assets. Pursuant to a private act of Assembly, this estate is sold to Captain Sims, not for the payment of debts generally, but for a sum supposed to be the amount of Captain Sims’s debt; vand it is agreed that the purchase money shall be retained in payment of this debt, and credited accordingly in the books of the late firm. At this time the estate of Mr. Nicklin is supposed to be solvent, but the administrators afterwards deemed it prudent to provide against the risque of devastavit, and Captain.Sims executes a bond and warrant conditioned to indemnify them against liability to the other creditors. The estate is then conveyed, and is afterwards sold by Captain Sims, at. whose request an arrangement is made, by which the purchase money is substituted for the land; and put within reach of the equity powers of this court, to determine the right of the executor of the elder Mr. Chew te any part of it; the contingency for which the bond of indemnity was intended to provide, having happened by the ascertained insolvency of Mr. Nicklin’s estate.
Now although the deed of trust be void as a security, and it be admitted (as it must) that the judgment against Nicklin’s administrators created no lien, it is certain that the existence of the debt intended to be secured, is unaffected by any of these circumstances. It is certain also, that the elder Mr. Chew had a lien for this debt in common with the other creditors; that the younger Mr. Chew, as administrator of Mr. Nicklin, is liable for a devastavit to those who are entitled under the will of his father; and that on a recovery against him, the bond of Captain Sims would be forfeited at law. The question then is, whether a court of equity will compel him to perform the covenant in the condition of his bond, or leave the obligees to their remedy at law: and haply this part of the case is free of difficulty, nothing being more certain than that, on the principle of quia timet, equity will execute a general covenant of indemnity sounding in damages: As in Ranelaugh v. Hayes, (1 Vern. 189,) where the plaintiff had assigned certain shares of the excise in Ireland, to the defendant, who covenanted to save the plaintiff harmless, and stand in his place touching the payments to be made to the king. The plaintiff suggested that he was sued by the king, and prayed that the defendant be decreed to perform his agreement; and the Lord Keeper decreed him to clear the plaintiff from all suits within a reasonable time; and compared the case to that of a counter bond, where, although the surety be not molested, yet will the principal be decreed to discharge the debt at any time after it has become due oh the original bond. The same principle was held in. Champion v. Brown, (6 Johns. Ch. Rep. 406,) and in Ward v. Buckminster, (cited 10 Ves. 162, and 3 Atk. 385.) In Pennsylvania the courts have acted on an analogous principle, by permitting a vendee to retain the purchase *205 money, to indemnify for a defect in the title against which the vendor has covenanted to warrant; and this before eviction. For the rest, I cannot do better than refer to the very satisfactory opinion of my brother Duncan, in Funk v. Voneida, (11 Serg. & Rawle, 115, 16.) who has, with his usual industry brought together all the learning on the subject.
On general principles of equity, then, it cannot be denied that the administrator of Captain Sims is bound to perform the covenant contained in the bond of indemnity, by paying the debt due to the executor of the elder Mr. Chew. But it is said the abstract rights of the parties are not before us; that those beneficially interested under the will of the elder Mr. Chew, cannot come in on the personal equity of the executor; and that our inquiry is restrained to a single point, by the agreement under which the cause is submitted.
I approach this agreement with a determination to construe it liberally for the purpose of doing complete justice to all parties; and to this end, instead of laying hold on particular expressions, I will have regard to the object and scope-of the whole. The deed of trust is not even mentioned in the agreement; but the judgment against Nicklin’s administrators is, and I concede that Mr. Chew believed that the claim on the part of his father’s estate depended on the lien which he supposed arose from it; and that both parties contemplated this as the matter to be determined. But was it the end proposed, or only accessary to the end ? The agreement was entered into at the solicitation of Captain Sims, and why should Mr. Chew agree to narrow the ground of his claim to a point? He did not so agree. The parties expressly declare that he is not to give up a particle of his right. The purchase money is to be substituted for the land, and subjected to the claim of the executor of the elder Mr. Chew, “as fully, unequivocally, and completely to all intents and purposes as the land or real estate herein before mentioned, might or could have been, if this instrument of writing had not been made or adopted, the same having been .proposed merely for the present accommodation of the estate of the late Walter Sims, and' not with any view, design, or intent to lessen, or in any wise to injure or abridge the rights or claim of the late Benjamin Chew, concerning the debt alleged to be due.” After this explicit declaration, can it be doubted that Mr. Chew’s executor may have recourse to the fund on any ground that would have sustained him in having recourse to the land; or is it of. any consideration that the parties misapprehended the foundation of the claim? It will be sufficient for the purposes of the argument, to show that the executor was entitled to satisfaction out of the land, on any ground.
I am not going to admit that a party may not stand on any equity but his own. On the contrary, where justice cannot be done to A. without decreeing performance of an act to B, it will be de *206 creed. But I undertake to show that the executor was entitled to satisfaction out of the land, not only upon his own equity," but upon the equity of those who are beneficially interested under the elder Mr. Chew’s will. As regards this part of the case, it is of no importance that one of the persons who, as administrators of Mr. Nicklin, confessed the judgment to the elder, Mr. Chew, and also effected the sale to Captain Sims, is the same person who, as executor of his father, now insists on having the judgment satisfied out of this fund. Quando duo jura in una persona concur runt, sequum est ac si essent in duobus. This maxim is applicable with peculiar force, inasmuch as the executor is a trustee for persons who can render the claim effectual only through his instrumentality; consequently their equity is his equity. Beside, all objection of a personal nature, on account of his having been a party to a transaction which he now attempts to overturn, is met by his own personal equity under the bond of indemnity. If, then, the persons claiming under the will are entitled to come on this fund, their trustees are entitled to come on it for their benefit. Now what are the facts? Captain Sims purchased on terms of receiving all the assets in payment of his own debt, leaving for the debt of Mr. Chew absolutely nothing but the desperate chance of payment by the surviving partner. It is pf no consideration that, at one period, the insolvency of Mr. Niclclin’s estate was unknown; before the transaction was consummated it was suspected, as is shown by the bond of indemnity, and that ought to have put Captain Sims on his guard. As a general rule, I agree that a purchaser from an executor is not bound to see to the application of the purchase money; and subject to the same qualification, I agree that an assignment of the assets in payment of an antecedent debt, is an assignment for valuable consideration; as was held by this court in Petrie v. Clark, (II Serg. & Rawle, 377.) But in all such cases • the creditor must act with scrupulous good faith; for if he knows, or has reason to suspect, the payment to be a misapplication of the assets, or prejudicial to the rights of the other creditors, he is a party to the devastavit, and equity will follow the assets into his hands. For this I refer to the authorities cited in support of the decision in Petrie v. Clark. But why should not a creditor who has obtained more than his share of the assets, even without fraud, be compelled to refund ? To permit him to' obtain such an advan- - tage, would be a breach of trust on the part of the executor, and to retain it would be against conscience on his own; and that would be sufficient to give jurisdiction to chancery which follows the assets, not on the supposition of a lien, but because one who purchases mala jide, or without valuable consideration, acquires no other interest than what the executor had, and stands precisely, in his place as a trustee. Now it is indisputable that the sale to Captain Sims was without consideration, except so far as he was entitled to payment out of the assets. For the excess, he was in the *207 predicament of one to whom the assets are given away; and iti such a case none will pretend that a Chancellor would leave the other creditors to their remedy against the person of the executor. By the laws of Pennsylvania, this real estate was assets for payment of the debts. It was sold as such by virtue of a private act of Assembly, and for the purposes of the argument, is to be treated precisely as a chattel. If so, the decision in Petrie v. Clark, fortified as it is by repeated decisions of the English Court of Chancery, both before and since the American revolution,(a) establishes a principle that covers the whole ground of the argument, to wit; that where the sale is collusive or without consideration, equity follows the assets into the hands of the purchaser.
Thus, the equity of those who are beneficially interested under the elder Mr. Chew’s will, furnishes a distinct ground on which the claim of his executor, may be sustained, and one which is within not only the spirit, but the letter of the agreement. But on both the grounds which I have indicated, I am of opinion that judgment be rendered for the defendants.
Duncan, J.
If is with reluctance I dissent from the opinion just delivered, because I think the representatives of Benjamin Chew have a right to recover this debt, through the security of the indemnifying bond given to the administrators of Philip Nichlin. But the agreement on which this action is founded is confined to one. inquiry,—were the ¿KZ/lands bound by the judgment, or had Benjamin Chew any lien on the land, by virtue of the defeasible deed ? It is admitted that the judgment does not bind. There, in my opinion, the question ends; for the' trust provides for nothing else. The stock represents the land. If. the land was not bound, the stock was not. It is a proceeding in rem. That thing, (the land,) and the liability of the land, was the exact question intended to be raised. The defeasible deed in the nature of a mortgage, to secure loans made and thereafter to be made, was a.mere security for the loans, and, not being recorded within six months, nothing passed until the registry; and the registry, being after Mr. Nicklin’s death, could not disturb the order of distribution fixed by our laws. There could be no relation to the execution of the instrument. The notice to Sims was immaterial. His right to distribute depended on the grade of his debt,—the order of payment prescribed by law. Besides, the whole arrangement shows that the land was not to be bound. The bond of indemnity was to secure the administrators from all creditors who might suffer by the preference given to Sims. The estate of Nichlin was supposed to be insolvent: this was not known at the time of the first agreement, *208 but was well known when the conveyance was executed; and this bond of indemnity was the basis on which the conveyance was given, and is as broad as the subject required. “Indemnify, save, and keep harmless from and against all controversies, suits, claims, and demands whatsoever,” and more particularly, “from and against all and every the present creditors of Philip Nicklin or Nicklin and Griffith,” by reason of the completing of the title.
The decision in Chew v. Griffith, was made on the ground of the relative equities of the parties. The administrators had confessed a judgment of record admitting assets. That judgment standing in full force, the case stated not that the debt was extinguished by the creditor’s making one of the administrators of his debt or one of his executors, unless the administrators had assets, and the judgment showed there were assets, but that stumbling-block- has been removed, for the very purpose of showing that there were not assets on a proper plea to the action. So, if Sims’s executors could show there were assets, Benjamin Chew’s representatives never could recover on the bond of indemnity against him on account of this debt.
The fund, by the express stipulation, is to be considered in the place and stead'of the land, subject to all intent's and purposes as the land, except for this argument. In fact, it is a case now to be decided on as an execution against Sims would have been by a purchaser at sheriff’s sale. On this judgment of Benjamin Chew against Nicklin’s administrators the remedy against Sims is on the personal security. The whole transaction shows that the administrators indisputably parted with the title, but at the same time it proves the personal liability of Sims. I put out of question the defeasible deed: it could not bind by the relation to its date, not being recorded within six months. As to the grantor and his heirs, the estate might pass, but not as to the creditors, by enrollment after his death. The right of the creditors attached, and there can be no relation to affect them. The recording acts of 1715 and 1775 are very different. No estate does pass in the case of defeasible deeds, unless recorded within six months. In the case of absolute deeds the estate does pass, to be devested in case of a purchaser or mortgagee without notice, when the conveyance is not recorded within six months.
I have endeavoured to bring my mind to the same conclusion with the majority of the court, because the justice of the cause is in favour,of the claim of Benjamin Chew’s representatives; but I do not feel myself at liberty to go.out of the four corners of the agreement, which was intended to raise only one question—the liability of the land on the judgment of Mr. Chew: the land not being liable, its substitute is not liable. The result would be the same—a recovery against Sims’s executors. The course would be more circuitous on the bond of indemnity, but the present claim is not founded on that, and I cannot, to avoid circuity, make a new *209 agreement for the parties, nor marshal the assets to meet my own notions of the equities of the parties. The action is founded on the agreement, and on that agreement my opinion is, that Benjamin Chew’s representatives are not entitled.
Rogers, J., concurred with Gibson, J.
Tilghman, C. J., being related to one of the defendants, and Huston, J., indisposed, took no part in the decision.
Judgment for the plaintiff.

 In McLeod v. Drummond, (17 Ves. 150,) Lord Eldon, after reviewing the cases prior to, and since the American revolution, adopts, in its full extent, the principle of Petrie v., Clark.—Reporters.