[PHILADELPHIA, APRIL 17th, 1837.]

GEST and Others *against* WAY and Another.

2wh445
141  99
2 Wh 445
23 SC ¹388

IN ERROR.

1. Where a testator devised certain real estate to his three daughters, and declared that if either of his daughters should die without lawful issue, or if their issue should die in their minority, without leaving lawful issue, then the land should go to his other child or children's lawful issue, in fee, &c. it was *held*.that an action of partition would not lie for the children of one surviving daughter, against the children of another surviving daughter : it being uncertain whether other children of such surviving daughter might not come *in esse*.

2. Devise to the testator's three daughters of certain tracts of land, to hold to them respectively during life, and after death to their issue, provided such issue live to be twenty-one, or have lawful issue. But if either of the daughters should die without lawful issue, or if such issue die in their minority without leaving lawful issue, then he gave the land so to them before allotted, to his other child or children's lawful issue, as tenants in common, to hold to them, their heirs and assigns forever. One of the daughters died under twenty-one, and without issue : *Held*, that the children of the other daughters took equally, *per capita*, in fee simple.

THIS was a writ of error to the Court of Common Pleas of Chester county, where an action of partition had been brought by Mary Ann Way and Joseph Morris Way, minors, by their guardians Jeremiah Barnard, junr., and Maris Taylor, against Mary Ann Gest, Joseph Gest, John B. Gest, Deborah Gest, Elizabeth Gest and Jacob T. Gest, also minors, who appeared by their father John Gest, to obtain partition of a tract of land, situate in West Marlborough township, and county of Chester, containing about 67 acres.

A case was stated in the court below to be considered as in the nature of a special verdict, the facts of which were as follows :

On the 5th of April, 1799, Jeremiah Barnard, of the township of West Marlborough, made his last will, containing among other things, the following devises :

" Item. I give and devise to my youngest daughter, Judith, all the lands and premises bounded and described as follows, (describing it,) containing sixty seven acres, together with the appurtenances. Also a small lot or piece of ground, that I bought of Samuel Thornton, situate in East Fallowfield township, bounded by lands of Matthew and George Welch, Caleb Phipps, Richard Barnard, and Doctor John Sturgis, containing four acres and twenty perches of land, with the appurtenances, all which to be delivered to her at the

age of eighteen years, to hold to her from thence after during her natural life, and then after her decease, to her lawful issue, provided that she hath issue who are or shall live to be twenty-one years old, or to have lawful issue, to hold to them their heirs or assigns forever."

"Item. I give and devise to my second daughter, Mary, all that part of my plantation described and bounded as follows, (describing it,) which said described premises to be delivered to my said daughter Mary, at the age of eighteen years, to hold to her from thence after during her natural life, and then after her decease, to her lawful issue, provided that she hath issue, who are or shall live to be twenty-one years old, or to have lawful issue, to hold to them, their heirs and assigns forever."

"Item. I give and devise to my eldest daughter, Ann, all the remainder and residue of my plantation, not before devised, containing about sixty-eight acres, with the appurtenances, (with certain exceptions,) all which to be delivered to her, (subject as aforesaid,) when she arrives to the age of eighteen years old, to hold to her from thence after during her natural life, and then after her decease, to her lawful issue, provided that she hath issue who are or shall live to be twenty-one years old, or to have lawful issue, to hold to them, their heirs and assigns forever."

"Item. It is my will, that if any of my daughters die without lawful issue, or if having issue, and such issue all die in their minority, without leaving lawful issue, then I give the land and premises so to them before allotted, *to my other child or children's lawful issue, as tenants in common*, to hold to them, their heirs and assigns forever."

On the 24th of August, 1799, Judith, the youngest daughter, died without issue.

On the 26th of August, 1799, the testator executed a codicil, not altering the will in any essential particular.

On the 28th of August, 1799, the testator, Jeremiah Barnard, died.

At the time of his death, his two daughters Ann and Mary were under age. Mary afterwards intermarried with Joseph Way, on the —— day of October, 1812, and had two children, Mary Ann Way, born in 1813, and Joseph Morris Way, born in August, 1815, which children are the plaintiffs in this suit. Ann afterwards intermarried with John Gest, on the 15th day of December, 1819, and had seven children, viz. Mary Ann Gest, Joseph Gest, John B. Gest, Deborah Gest, Jeremiah Gest, (who died unmarried and without issue, before bringing this suit,) Elizabeth Gest and Jacob T. Gest, which children (with the exception of Jeremiah Gest deceased,) are the defendants in this cause. The said John Gest and Ann his wife, survived the said Jeremiah Gest, (deceased,) and both they and the said Mary are still in full life; the said Ann being about thirty-seven

(Gest v. Way,).

years old, and the said Mary Way being about thirty-five years old.

The part allotted to Judith in the will of the testator, is described at this day as follows, viz.—" A plantation and tract of land, situate in West Marlborough township, and county of Chester, bounded by lands of Jeremiah Barnard, the heirs of Dr. Wm. F. Mitchell, Job Lamborn, and others, containing sixty-seven acres, be the same more or less, with the appurtenances,"—which premises the plaintiffs allege they hold as tenants in common with the defendants, and claim to have partition of the same, and one half thereof to be allotted to them, viz. one fourth thereof to each of them.

If the court shall be of opinion with the plaintiffs, judgment to be entered that partition be made accordingly to the declaration, with costs; if with the defendants, judgment to be entered for defendant with costs.

The court below gave judgment for the plaintiffs, that partition be made between the parties, &c. as demanded; whereupon the defendants sued out this writ of error.

Mr. *Bell* for the plaintiff in error.

This court decided on a former writ of error between some of the parties that the limitation over on the death of Judith operated by way of executory devise, and the issue of the other children took as purchasers. *Way* v. *Gest*, (14 *Serg. & Rawle*, 40.)

1. An action of partition as it is modified in this state cannot at present be maintained between these parties. There is no doubt that in case of the birth of other children of the daughters of the testator, the estate would if undivided open to admit them. *Fearne on Rem.* 315, note *f*. *Cook* v. *Cook*, (2 *Vernon*, 545.) Then if the usual judgment in partition is to be given, viz. that the partition remain firm and stable forever, the after-born children would be excluded. In 16 *Vin. Abr.* 237, it is said by GAWDY, J. that the judgment on the stat. 32 Hen. 8, shall not bind him in reversion. Our acts of assembly authorize a valuation and sale if the property cannot be divided. What will become of the shares of the after-born children in such case? *Alnatt on Partition*, 63, 70, 91; *Kennedy* v. *Nedrow*, (1 *Dall.* 415;) *Bicknell* v. *Young*, (1 *Serg. & Rawle*, 467;) acts of 1799, 1807, 1821, 1824.

2. The grand children of the testator took *per capita*. There is nothing in the will to show an intention that the daughters should take as stocks. The words " tenants in common," are generally understood to imply equality of interest. They took as purchasers, and therefore *per capita*. *Powel on Devises*, 360. *Weld* v. *Bradbury*, (2 *Vern.* 705.) *Norway* v. *Spring*, (1 *P. Wms.* 340.) *Barnes* v. *Patch*, (8 *Ves.* 604.) *Lincoln* v. *Pelham*, (10 *Ves.* 166.) *Blackwell* v. *Webb*, (2 *P. Wms.* 383.) *Anon*, (1 *P. Wms.* 326, note.) *Gwinn* v.

(Gest *v.* Way.)

*Howard,* (1 *Br. Ch. Rep.* 33.)    *Butler* v. *Stratton*, (3 *Br. Ch. Rep.* 367.)    *Davenport* v. *Nanbury*, (3 *Ves.* 257.)    *McNeilledge* v. *Galbreath*, (8 *Serg. & Rawle*, 43.)

Mr. *Dillingham* and Mr. *Sergeant*, for the defendants in error.

1. We are entitled by the common law and the provisions of the acts of assembly to partition of an estate held in fee simple, and it lies on the other side to show some restraint upon this right. We ask only that the moiety of Judith's share shall be set off to us, and are willing to hold it subject to the possible birth of other issue. The difficulties that may arise in case of a sale are not material here; though they are by no means insurmountable. It is common to order the investment of money brought into court after a sheriff's sale, where there is not a present right to receive it. Suppose this estate had been sold under a prior mortgage given by the testator and the surplus brought into court, the same question might be made. The partition is at all events good until the event happens—if it ever does—which is to vary the rights of the parties. In *Wills* v. *Slade*, (6 *Ves.* 498,) Lord Eldon puts this case and expressly affirms the right to partition. In *Parker* v. *Gerrard*, (*Ambler*, 236,) it is said that a difficulty in making partition is no objection—partition being a matter of right. And the law is laid down in the same way in *Baring* v. *Nash*, (1 *Ves. & Beames*, 555.)

2. There are none of the words here which are frequently relied on by the courts, as an intention to divide *per capita*. The whole will is to be taken together, and it will be seen that he divides his property into three parts, and throughout proceeds upon the idea of representation. Now if the court have any doubt they will resort to the statute of distributions as the exponent; and then the descent is cast *per stirpes*. 1 *Roper on Legacies*, 126; 2 *Williams' Ex'rs.* 729; 7 *Ves.* 531; 10 *Ves.* 166; 2 *Cox's Eq.* 187; 2 *Roberts on Wills*, p. 13, 29. In the case of *Lincoln* v. *Pelham*, cited on the other side, the Lord Chancellor relied on certain expressions of the testator, none of which are found here.

Mr. *J. R. Ingersoll*, in reply, was stopped by the court.

Rogers, J., (after stating the material facts)—In *Way and another administrators of Way* v. *Gest*, (14 *Serg. & Rawle*, 40,) a case arising under the same will, it was decided, that the devise to Judith was of an estate for life, with a contingent remainder, with a double aspect to her issue in fee. But in consequence of the death of Judith before her father, that which would otherwise have been a contingent remainder is converted into an executory devise to the issue of Judith in fee. The devise to her for life, never having taken effect, is considered as if limited without any intermediate estate of freehold, and enures by way of executory devise. Upon

(Gest *v.* Way.)

the death of Judith, in the lifetime of the testator, the estates of the issue of the other child or children, became restored under the second aspect of the contingency provided in the will, viz. Judith dying without issue living to the age of twenty-one years, or having issue, then his other child or childrens' lawful issue, as tenants in common, to hold to them, their heirs and assigns, forever; and their interest in the estates, vest at the instant of their birth, liable however, as has been conceded in the argument, to open and let in the brothers and sisters as they might be afterwards born. Thus each share is liable, under a subsequent contingency, to be diminished in quantity by the birth of after-born children, and again to be enlarged by their death under the age of twenty-one years, without issue; and the estate of the persons *in esse* liable to be entirely defeated by his own death, under the age of twenty-one years, and without having issue. This being a case where, under this construction, persons may hereafter come *in esse* who may be eventually entitled to a share of this estate, the question arises whether this be an objection to the demand for a partition. In chancery, it would seem that it is no objection to a partition, that persons hereafter to come *in esse* may eventually be entitled, together with the present proprietors, under a contingent remainder, executory devise, or shifting use. This doctrine is grounded on the case of *Wells* v. *Slade,* (6 *Ves.* 498,) where Lord ELDON is represented as having said, that this was no objection to a partition. But it must be observed that the case did not call for the decision of this question. The case was this: A. was tenant for life of an undivided moiety, with remainder to all the children of his body to be begotten, equally, as tenants in common in tail, with cross remainders among them in tail; A. and his four infants, brothers, filed a bill against the persons entitled to the other undivided moiety. An objection was taken from the possibility of other children, but in answer the counsel for the defendant said, that all parties were willing to have a partition, if it could be made; on which the Chancellor said: ' At all events you are entitled to a partition during the life of the tenant for life.' He also further observed, ' but I think this is no objection; for if so, in every case where there is a settled estate with remainders to persons who may come *in esse*, there never can be a partition.' In chancery, when a partition is made pursuant to a decree in equity, it is finally perfected by mutual conveyances of the allotments made to the several parties. And this is consonant to the well known doctrine, that a decree in equity does not bind the land itself like the judgment of a court of common law; but only binds the person. *Æquitas agit in personam non in rem.* When once a partition therefore, as is said in *Alnatt on Partition*, 123, is decreed in equity, and the commission is executed, the parties stand precisely in the same situation, so far as regards the conveyances or assurances necessary for the perfection of the partition, as if they had agreed among themselves to make

(Gest *v*. Way.)

partition. There can be no doubt that the parties *in esse* may make an amicable or conventional partition, as they may voluntarily subject themselves to all the inconveniences which may result from a temporary division; and if Lord ELDON viewed the case of *Wells* v. *Slade*, as of that description, no possible objection can be made to the decree, for an account, and a commission for partition between the plaintiffs and defendants, according to the prayer of the bill. We are not informed in the report of the case, which is the only one cited, what was the nature of the final decree, nor whether the partition was temporary or permanent; nor in what way, if at all, the interests of the parties was protected. But conceding that this may be done, through the medium of the flexible machinery of a court of chancery, yet we do not clearly perceive how such rights can be preserved through any process known to the courts of this state. It is very clear that the court cannot give a judgment in partition, of such a permanent nature as may not be liable to be defeated, or at least affected by the birth of other children, after judgment, for that would be contrary to the will of the testator, and a virtual disinherison of the children after born. The partition must of necessity be of temporary duration, depending upon a subsequent contingency, and in such case, the argument *ab inconvenienti* is exceedingly strong. On the birth of each child, the estate which before by the judgment in partition was held in severalty, is converted into an estate in common, at least so far as the interest of the after-born child is affected. A new partition must be made, and this may be again repeated at the birth of each successive child; and whether the after-born child would hold in common with each to whom the allotments had been made as a tenant in common, with all the devisees, might present a serious question. These are some of the difficulties which result if partition is made before all who may be eventually entitled, come *in esse*. Now although these are inconveniences to which a person may voluntarily submit by a conventional partition, yet under such circumstances, no person should be compelled in the language of the act to make partition, nor can we believe that this would be a reasonable construction of the statute. The holder in severalty, which must be of a temporary duration, would be unable with safety either to improve or dispose of the share allotted to him, and property held by so precarious a tenure, would be of but little value to the possessor. Besides, where equal partition in value cannot be made, the sheriff and inquest by the act of the 7th of April, 1807, have power to equalize the purparts by a valuation of the purparts respectively, and making the shares subject to such sum as may equalize them in value. And by the act of the 11th of April, 1799, when the parties will not agree to take the lands at their appraised value, they are directed to be sold in the manner therein prescribed. A difficulty arises as to the disposal of the money so as to secure the rights of all the parties now in

interest, or who may hereafter be entitled. These considerations have induced the court to conclude that the defendants cannot be compelled under the proper construction of the acts to make partition.

The next question is, on the limitation over, whether the distribution is to be made *per stirpes* or *per capita*. The testator directs that if any of his daughters die without lawful issue, or if having issue, and such issue all die in their minority, without leaving issue, then he gives the land and premises, so to them before allotted, to his other child or childrens' lawful issue, as tenants in common, to hold to them, their heirs, and assigns, forever.

Judith having died before her father, this clause has been construed as an immediate devise to the lawful issue of his surviving children, viz. to the children of Mary and Ann, their heirs and assigns. *Way v. Gest*, (14 *Serg. & Rawle*, 40.) The word issue is often held to mean children, or descendants; and in that sense, it was used in this will. This term is of very extensive import, and when used as a word of purchase, and unconfined by any indication of intention, will comprise all persons who can claim as descendants, from or through the person to whose issue the bequest is made. The testator passes by, in the limitation over, his own children, and limits the estate on the happening of certain contingencies to the issue; or in other words, to the child or children of his surviving daughter or daughters, as tenants in common, to hold to them, their heirs and assigns forever. It seems to me, that whatever the actual intention of the testator may have been, the legal construction of such words, and words of similar import, has invariably been to make distribution *per capita*; nor can I perceive anything, but rather the contrary, in any preceding clause from which we can safely infer a contrary intention. It has been repeatedly held, that when the bequest is to relations, to descendants, to next of kin, &c. to be equally divided among them; or where expressions of a like import are used, the devisees will be entitled, as tenants in common, and will take equal shares *per capita*, 1 *Roper on Legacies*, 126, where the cases are collected. Thus under a disposition by will, to A. and B.'s families, children are entitled exclusively of their parents, and take *per capita*. *Barnes v. Patch*, (8 *Ves. jun.* 604.) The Master of the Bills, in delivering the decree, says, that the only construction is, that by the words, family, children, are meant; and he adds, if that is the construction, does it not follow that the division must be *per capita?* So under a devise to the issue of A. all descendants were held to be entitled. *Davenport v. Hanbury*, (3 *Ves. jun.* 257.) In that case it is intimated, that whenever they take as purchasers, the division must be made *per capita*; and in all cases when the words, " equally to be divided," are superadded, it has been held that they take *per capita*, and that the only effect of these words is to change the estate, from a joint tenancy to a tenancy in common. 3 *Bro. C.* 367. 3 *Ves.* 257. And in *Blackler*

(Gest *v.* Way.)

v. *Webb & al.*, Samuel Bagwell, who was possessed of a considerable personal estate, and had several children, some of whom died leaving children, bequeathed the surplus of his estate equally to his son James, and to his son Peter's children, to his daughter Traverse, and to his daughter Webb's children, and it was held, that the children took *per capita.* The Chancellor was at first inclined to the opinion that the grandchildren should take *per stirpes,* but he at length decided, that each child should take *per capita,* as if all the grandchildren had been respectively named. In *Northey* v. *Strange,* (1 *P. Wms.* 341,) it was held, that children and grandchildren take *per capita,* and not *per stirpes.* They all take in their own right, and not by way of representation. And in *Lady Lincoln* v. *Pelham,* (10 *Ves.* 166,) it was also held, somewhat reluctantly, by the Chancellor, who was constrained to make the decree by the weight of authority, that in case of a bequest of one-fourth of an estate to the children of A., and one-fourth to and among the children of B., distribution must be made *per capita.* So where there was a bequest of personal estate to the testator's wife, "and at her decease to be divided between her and my near relations equally," the estate, after the wife's death, was divided, share and share alike, *per capita,* between the brothers and sisters of the testator, living at his death, and the children of such brothers and sisters as were dead, and the mother of the wife, the father being dead. *M'Neilledge* v. *Galbraith et al. Ex. of Thomas,* (8 *Serg. & Rawle,* 43.) See also *M'Neilledge et al.* v. *Barclay,* (11 *Serg. & Rawle,* 113,) where it is decided, that the real estate is to be divided in the same manner as the personal estate. Here the devise is, in effect, to the children of his daughters Mary and Ann, respectively, as tenants in common; who take the estate as purchasers, and not in right of their respective parents. In the absence, therefore, of any expression in the will which indicates a different intention, we think it necessarily results from the force of authority, that distribution must be made *per capita.* We are further of the opinion, that the estate of Jeremiah Gest was a fee simple, but that his estate was entirely defeated by his death, under the age of twenty-one years, and without having issue.

Judgment of the Common Pleas reversed,
and judgment for defendants.