## Mayhew's Estate.

Argued December 4, 1931. Before FRAZER, C. J., WALLING, SIMPSON, KEPHART, SCHAFFER, MAXEY and DREW, JJ.

*Grover C. Ladner,* of *Ladner & Ladner,* with him *H. Crowell Pepper,* for appellant.—The word "issue" when used in a will without any qualifying words means descendants in all degrees: Joyce's Est., 273 Pa. 404; Gest v. Way, 2 Whart. 445; Duckett's Est., 214 Pa. 362; Taylor v. Taylor, 63 Pa. 481; Wistar v. Scott, 105 Pa. 200.

*R. M. Remick,* with him *William H. Peace,* for appellee.—Where a grantor or testator makes a gift to "descendants" or "issue," unexplained by anything in the context of the instrument, the children do not take concurrently or per capita with their living parents, but take per stirpes: Lucas's Est., 14 Pa. D. & C. 624; Campbell's Est., 202 Pa. 459.

If explanatory context be required to support the contention of appellees it exists in the will at bar.

There is nothing inconsistent in the conclusion of the court below with prior decisions in this case: Mayhew's Est., 80 Pa. Superior Ct. 404.

OPINION BY MR. JUSTICE KEPHART, January 11, 1932:
The sole question for our consideration in this case is the construction of the word "issue." It arises in the following manner: Lavinia M. Mayhew died seized of real estate in Philadelphia and elsewhere, which she devised as follows: "I give and bequeath to my said daughter Gertrude Estelle Mayhew all my personal property and the interest of all real estate belonging to me, as long as she lives, but if my said daughter Gertrude Estelle Mayhew should marry, then at her death the interest of my real estate goes to her issue.

"But in the event of my daughter's death, without issue, all my property shall go to the Home for Destitute Colored Children, located at Maylandville on the Darby Road."

Gertrude Estelle Mayhew afterwards married Charles Pike, and was survived by six children at her death. Eleanor, one of the six, instituted proceedings to parti-

tion the real estate; in this she was joined by four of the other children. Gertrude P. Kuser, the sixth child, objected to it because her children, five in number, were not made parties to the proceeding, claiming that they had an interest in the estate and that unless they were so made parties a proper partition could not be had. The basis of her claim was that the word "issue" used in the will of her grandmother, "without explanatory or qualifying words, or the will failing to indicate a different meaning, means that descendants of all degrees of consanguinity" are to share equally, or per capita.

The life tenant was survived by six living children and no issue of deceased children. Of these six living children, Mary had one child, Charles two, Margaret four, Francis none, Eleanor none, and Gertrude, the real appellant, five. The children and grandchildren of the life tenant together number eighteen, and it will readily be seen that under the appellant's contention as to the testatrix's meaning of "issue," Gertrude Kuser and her children would receive six-eighteenths or one-third of the whole estate, and the other branches of the family varying shares in proportion to the number of children in each at the death of the life tenant. Eleanor, the unmarried child of the life tenant, and Francis, married but without children, would each receive but one-eighteenth. The court below denied appellant's claim and held that "issue" as used by the testatrix meant that where there are children of the life tenant and also living children of these children (grandchildren of the life tenant), such children of the life tenant were intended to take to the exclusion of their issue. In other words, that the proper distribution is per stirpes and not per capita. Gertrude Kuser, by the guardian of her children appointed ad litem, has appealed.

The intention of a testator is to be gathered from the meaning of the words used in his will. Where words used might under a given construction lead to a result that is highly improbable, the court will lean toward a

construction that will carry out the natural intention of the testator. See 6 Illinois Law Review 230. But, of course, where the meaning of the testator may be ascertained from the will, it must govern. Here the word "issue" is neither qualified, explained nor modified by any context, and this court must for the first time fully decide the construction to be given the word when used as it is in the will now before us. The courts of other states and of England have considered this matter, and two conflicting rules have been evolved as a result.

Testatrix created a life estate, with a remainder to the "issue" of the life tenant. See this same estate, 80 Pa. Superior Ct. 404. Did she mean that the remainder was to be divided equally among the living children of the life tenant, and if a child was deceased, go per stirpes to its issue; or did she mean, as appellant contends, that the remainder should be divided into equal parts and distributed indiscriminately per capita among all of the children, grandchildren, or perhaps great-grandchildren alike? Did she by "issue" mean that all descendants of every degree of consanguinity should share alike per capita? It seems that to state the latter question is to answer it, for anything more contrary to a presumed testamentary intent can scarcely be imagined; yet there is authority of note which supports the affirmative of this proposition.

The English decisions appear to be uniform that where "issue" or "descendants" is used unconfined by any indication of intention, children take concurrently and per capita with their parents: Leigh v. Norbury, 13 Ves. Jr. 340; Maddock v. Legg, 25 Beav. 531; In re Jones's Trusts, 23 Beav. 242; Freeman v. Parsley, 3 Ves. Jr. 421; Cancellor v. Cancellor, 2 Dr. & Smale 194; In re Burnham, Carrick v. Carrick, [1918] 2 Ch. 196.

The rule, however, is not without criticism even in English courts which follow it. Thus in Cancellor v. Cancellor, supra, it is stated: "It is certainly not very

probable, a priori, that a testator should intend that parents and children and grandchildren should take together as tenants in common per capita; and the court will not very willingly adopt that construction," and in Freeman v. Parsley, supra, it is stated: "I very strongly suspect, that in applying that to this will, I am not acting according to the intention; but I do not know what enables me to control it."

The New York Courts held strictly to the English rule until the legislature by statute (Consol. Laws, chapter 13, section [a] ) changed the rule so that "issue," if in equal degree, take per capita, but if in unequal degree, per stirpes, unless a contrary intent is shown. Prior to this act, one of the courts of that state expressed its opinion that its construction of "issue" did violence to the intent of the testator. See Petry v. Petry, 186 N. Y. App. Div. 738.

Rhode Island, in two early cases, held that the word "issue" in the context of a will meant all descendants, but in the recent case of Rhode Island Hospital T. Co. v. Bridgham, 42 R. I. 161, 106 Atl. 149, the authority of these two previous cases is seriously questioned. The court stated: "It is apparent that courts generally have a strong feeling that, in directing the distribution per capita of a gift to issue, they may be defeating the real intention of the testator where such distribution will result in giving to issue of a more remote generation an equal share with those of a nearer generation," and the courts of that state now say that, upon the slightest indication of such an intention, issue shall be made to import representation,—a meaning in conformity with that expressed by a majority of the states in the Union.

In Ridley v. McPherson, 100 Tenn. 402, 43 S. W. 772, the English rule was squarely followed, although granting that the testator probably intended the opposite results. But see Lea v. Lea, 145 Tenn. 693, 237 S. W. 59. It is there pointed out that the whole tendency of the modern decisions is to get away from the per capita rule

which has been followed in this country only because a few courts "have continued a definition of 'issue' which the courts of England adopted with reluctance."

Attention may be called to the following cases in South Carolina which followed the English rule; but recent cases in that state show an intention to abandon it for the more equitable rule of the other states: Rembert v. Vetoe, 89 S. C. 197, 71 S. E. 959; Duncan v. Clarke, 106 S. C. 17, 90 S. E. 180; Thomson v. Russel, 131 S. C. 527, 128 S. E. 421.

The only courts we have found which still follow the English rule are those of New Jersey; there the subject-matter of the gift or grant is equally divided among all descendants though they be of different degrees: Price v. Sisson, 13 N. J. Eq. 168; Weehawken Ferry Co. v. Sisson, 17 N. J. Eq. 475; Security Trust Co. v. Lovett, 78 N. J. Eq. 445, 79 Atl. 616. But, even in that state, the opposite result is reached if "it clearly appears testator used [issue] in a particular meaning less general than its ordinary meaning": Inglis v. McCook, 68 N. J. Eq. 27, 40, 59 Atl. 630.

Many articles have been written on the subject. See 6 Ill. Law Review 217, 230; Redfield on Wills, 3d edition, volume 2, chapter 1, section 3; 35 Yale Law Journal 571, to which the reader may be referred for a further discussion of the question. The courts of Massachusetts, Maine, Rhode Island, South Carolina, Tennessee and Illinois, (see list of authorities noted in Wyeth v. Crane, 342 Ill. 545, 548, 549, 174 N. E. 871, 872, 873), now may be said to hold that the word "issue" does not include parents and children taking concurrently.

In Jackson v. Jackson, 153 Mass. 374, 26 N. E. 1112, there was a gift to a daughter during her life and at her death to her issue. On her death, the daughter left four children and five grandchildren, the children of a living child. In distributing the gift, the court said: "We are of the opinion that when by a will personal property is given in trust to pay the income to a person during life,

and on the death of such person to pay the principal sum to his issue then living, it is to be presumed that the intention was that the issue should include all lineal descendants, and that they should take per stirpes, unless from some other language of the will a contrary intention appears."

In Wyeth v. Crane, supra, the word to be construed was "descendants," which was held to be coextensive and synonymous with "issue." After an extended review of the authorities on both sides, the court concluded: "We believe the correct rule to be that, where a grantor or testator makes a gift to 'descendants' or 'issue,' unexplained by anything in the context of the instrument, children do not take concurrently or per capita with their living parents, but take per stirpes," so it may be safe to lay down as a rule of construction that "issue" prima facie is a word of purchase, and, in the absence of a contrary intention, children do not take concurrently with their parents but the division is per stirpes.

Apart from anything else, the justice of a per stirpes distribution cannot be denied. Ordinarily, a testator in creating a life estate for one as the special object of his bounty (if that object is to continue within his special care) would next naturally consider only the immediate issue of such life tenant, that is, his children. A parent's solicitation is usually paramount for his child, for grandchildren it is not so intent, and for great-grandchildren still further removed. Here, the testatrix provided for her daughter for life, and at her death she might naturally be expected to look after her daughter's children; but assuredly her inclination would not be to go to remoter degrees in search of beneficiaries, nor should any artificial rule of construction or any forced interpretation of the words she used carry the intent to that extent. We therefore agree with the growing majority of states which hold that where the word "descendants" or "issue" is unexplained in the context of the instrument, children do not take concurrently or per

capita with their parents, but take per stirpes. The inequity of the per capita rule in the present case is manifest for under it the division would be in eighteen parts, and one of the beneficiaries, a grandchild, would take in equal proportion with a living child.

We are not unmindful that there are numerous authorities in this and other states holding that "issue" means prima facie "heirs of the body" or "descendants" in every degree. It is granted that the word is of debatable meaning, and that under certain conditions it may mean heirs of the body, depending on the context. Courts were formerly inclined to construe it in this way, as heirs of the body or descendants; but this construction arose generally in cases where the rule in Shelley's Case was involved. Thus, in the case of a gift or devise for life, remainder to issue, issue was quite generally construed as a word of limitation, synonymous with heirs of the body, and the rule of Shelley's Case applied, with a resultant fee tail. See Clark v. Baker, 3 S. & R. 470; and Paxson v. Lefferts, 3 Rawle 59. That rule was for a long time in our judicial history much favored, with the result that courts often used its reasoning and effect in other circumstances or under other conditions where such application might be said to be questionable. From such cases as these, there crept into our books numerous statements to the effect that issue meant heirs of the body. See Gest v. Way, 2 Whart. 445; Miller's App., 52 Pa. 113; Taylor v. Taylor, 63 Pa. 481; Robins v. Quinliven, 79 Pa. 333; Wistar v. Scott, 105 Pa. 200; Shalters v. Ladd, 141 Pa. 349; Oliver's Est., 199 Pa. 509; Duckett's Est., 214 Pa. 362. But in all of these cases it is important to note that there follows immediately after the broad generalization the qualification that "issue" will not be so construed where there is anything present to show a contrary intention. Hence, the artificial conclusion to the effect that "issue" meant "heirs of the body" reached by early courts, influenced by a leaning toward the rule in Shelley's Case, can no

longer be regarded as applicable in interpreting the word where the context of the will does not lead to such conclusion. Where a user has failed to make clear in what sense he has used the word, it is not at all surprising that courts have reached opposite conclusions, and it is only by following the results with the apparent considerations that must have been in testator's mind that one comes to a just and equitable decision.

Decree of the court below is affirmed at appellant's cost.