## Hummel's Estate

2

4

6

*Albert L. Bricklin, Robert F. Lehman, John J. Mitchell, Jr., Elmer A. Schroeder,* and *Gordon A. Block,* for exceptants.

*Waymon B. McLeskey* and *Richard T. McSorley,* contra.

HUNTER, J., September 15, 1943.—We agree with the conclusions of the auditing judge and deem it unnecessary to add anything to what he has so well said in his adjudication.

For the reason given by him, the exceptions are dismissed and the adjudication is confirmed absolutely.

VAN DUSEN, P. J., dissenting.—Testator gave his estate to his wife for life and then to his children living at the death of his wife and the issue of any deceased. If the children should die without leaving issue he directed that the fund "shall go to and vest in the said children of the above named Godfrey Hummel and Louis Hummel in equal shares per stirpes". The children of testator died during the life tenancy without leaving issue, and distribution is to be made to the children of Godfrey and Louis. Godfrey and Louis were brothers of testator and both survived him. Five children of Godfrey survived testator, of whom three are living, and two died during the continuance of the life estate, leaving issue. Ten children of Louis survived testator, of whom five are living; three died during the continuance of the life estate, leaving issue, and two died during the continuance of the life estate without leaving issue.

The auditing judge, in dealing with the expression "in equal shares per stirpes", concluded that it meant that "distribution must be *per stirpes* as between the two sets of children, but *in equal shares* within the respective families". One half of the fund, therefore, was awarded to the five children of Godfrey and the other half to the 10 children of Louis, all of whom were living at the death of testator. Those children who were still living received their shares, and the shares of those who had died were awarded to their representatives in the rights of the decedents—not to the issue of such decedents in their own rights.

Exceptants are the five children of Louis who are living and the children of the three who died during the continuance of the life estate leaving issue. In their twenty-second exception they claim that the fund should have been divided into 13 shares, omitting the two children of Louis who died during the life estate without issue (Louis Hummel, Jr., and Mary H. Scott), and giving to each living child of Godfrey and Louis (eight in number) an equal share, while the children of the five deceased children receive the share which the parent would have taken if living.

Prima facie, a gift to the children of B and C is to be distributed equally among them per capita: A. L. I. Restatement of Property §301; Davis' Estate, 319 Pa. 215. This is the mode of distribution of the Intestate Law of June 7, 1917, P. L. 429, when B and C are brothers and sisters of testator: section 9(b), 20 PS §63.

In this case we have the additional words "in equal shares per stirpes".

The words "per stirpes" tend to show a division by families and not by heads: A. L. I. Restatement of Property, §300, comm. (f); §301, comm. (g). The mention of the two brothers, Louis and Godfrey, by name has the like tendency: A. L. I. Restatement of Property, §300, comm. (b).

That Godfrey and Louis were living when the will was made and when testator died, and that nothing was given to them, tends to show that testator intended to treat all their children alike—a division by heads: A. L. I. Restatement of Property, §301, comm. (f); Davis' Estate, supra. The words "in equal shares" to me tend to indicate a division in equal shares among all the children alike. The auditing judge thought that these words indicated that the division within each stirps was to be equal. I cannot imagine any other division within the stirps, and I think we ought to find some useful signification for this expression if we can. An-

other meaning can be found for the phrase "per stirpes", as I shall presently show; and the phrase "in equal shares" may then be interpreted as a reaffirmation of the ordinary rule for a division among all the children in both the families per capita.

For the phrase "per stirpes" may have a dual significance, first, as showing a division by families instead of by heads (as noted above), and, second, as creating a substitutionary gift in favor of the children of any of the beneficiaries named who may die before the time of distribution. I have contented myself above with a simple reference to sections in the Restatement as authority without quoting them in full, because I find the language so complicated at times, and the cross-references so many, that the passages are difficult to follow; and I think I can make my meaning clearer in my own words. But the statement just made is so important that I must quote the Restatement on this point in full.

In section 301 it is stated that a gift to the "children of B and children of C" is to be distributed per capita, except to the extent that a different mode of distribution is indicated by additional language. In comment (g), a cross-reference is made to §300, comm. (f), for a discussion of the language which would show such a different intent. In §300, comm. (f), is found the following:

"Such a different intent is manifested under some circumstances by the presence in the limitation of the phrase 'per stirpes.' If the limitation is to the 'children of B per stirpes' no such different intent is manifested with respect to the primary class gift. The phrase 'per stirpes' in this setting merely regulates the distribution of the gift which is substituted, by virtue of the presence in the limitation of the term 'per stirpes', for the share of a child of B who dies prior to distribution. Hence, under such a limitation, if, at the time of dis-

tribution B's descendants consist of one child of B and two grandchildren of B, who are the descendants of a deceased child of B, the property is divided into halves, one of which goes to the child of B and the other half goes in equal shares to the two grandchildren of B as the representatives of their deceased parent. The term 'per stirpes' thus connotes a distribution to be made on a representative basis. If, however, the limitation is to the 'nephews of B, per stirpes,' and B has nephews in the families of two or more of his brothers and sisters, then the phrase 'per stirpes' has dual significance. In the first place it indicates that the nephews constituting the offspring of each brother or sister take a single share as a group. In the second place, it indicates substituted gifts distributable upon a representative basis as to the share thus obtained by each nephew, that is, if such a nephew dies leaving children, such children represent the deceased parent and take the share he would have taken, if he had lived to the time of distribution. This two-fold significance of the phrase 'per stirpes' exists wherever the persons described by the 'single group designation' do in fact include persons from two or more different families." At page 1648 is found the following illustration of comment (*h*) on §301:

"1. A, having assets worth upwards of $50,000, makes an otherwise effective will devising these assets 'to the children of my brothers B and C per stirpes.' At the time A executes this will B has two children D and E, and C has one child F. D has children G, H and I and dies. A dies and this will is duly probated. The heads of the respective stirpes are D, E and F. One-third of the devised assets is acquired by E, one-third by F and one-third by G, H and I collectively."

The auditing judge refused to give to the phrase "per stirpes" the first meaning above stated, saying that the gift was to one generation only (children), and that

the phrase "per stirpes" could not of itself create gifts to other generations. This statement seems to me to amount to a denial of the authority of the passage; for it is stated therein with a simplicity which prevents all misunderstanding that there is a "gift which is substituted, by virtue of the presence in the limitation of the term 'per stirpes', for the share of a child of B who dies prior to distribution".

This effect of the phrase "per stirpes" is a novelty to me also; and I am disappointed that the only authority which counsel have cited, or which I can find, is Rhode Island Hospital Trust Co., Trustee, v. Shaw et al., 50 R. I. 78. This is an unsatisfactory advisory opinion, which contains no discussion or citation of authorities. The other cases cited by counsel for exceptants are not in point, as they concern the application of the expression "per stirpes" to gifts to a class composed of several generations.

When the phrase "per stirpes" is added to a gift to issue, or to any other class which may contain persons in several generations, "per stirpes" is easily interpreted as effecting an orderly arrangement among the class, the child taking in place of the father, and so on. See Mayhew's Estate, 307 Pa. 84. But when this phrase is applied to beneficiaries all of one generation, such as children, it is indeed difficult (and in the opinion of the majority impossible) to regard it as creating beneficiaries in a generation which is not mentioned, who take in an event which is not mentioned.

Such is the authority of the Restatement, however, that I would accept it until something appears to the contrary. I can find nothing pro or con except the Shaw case.

The result is that I would award equally to all the children of Godfrey and Louis, and where any have died before the end of the life estate I would award to their living children instead, such children taking in

their own rights, and so on. The Restatement refers only to cases in which a primary beneficiary dies before testator. But I think the spirit of the rule requires that it be applied also where there is a precedent life estate and the primary beneficiary dies before the termination of the life estate. The Shaw case so holds.