## Phillips Estate

*Henry B. Oestreich*, for accountant.

*Rodney T. Bonsall*, for claimants.

SHOYER, J., May 24, 1961.—This trust arises under the handwritten will and codicil of Robert R. Phillips, who died April 14, 1896, whereby he gave his entire estate to his trustee, in trust, to "pay the net income thereof half yearly, share and share alike, to my three daughters, Mary, Elizabeth, and Jane, or the survivors of them during their lives, or the life of the survivor of them, and upon the death of the last surviving daughter, neither of them leaving issue, said estate shall vest in such person or persons as may then be entitled to my estate under the intestate laws of Pennsylvania . . . But should any of my said daughters die leaving issue, said issue shall receive such share of the income of said estate as his, her or their mother would have taken if living, and upon the death of the survivor of my said children the principal of my

said estate shall be divided share and share alike among the issue of any or all of my said daughters."

By his codicil, testator provided that the legal representatives of Mary should receive $500 less, such being the amount of his advancement to her.

The fund being accounted for was awarded to the accountant, substituted trustee, in trust, by the adjudication dated June 25, 1940, of Klein, J.

The trust has expired by reason of the death on November 17, 1955, of Mary C. P. Jenkins, testator's last surviving daughter.

It appears from the statement of proposed distribution that testator's daughter, Elizabeth, died June 24, 1928, without leaving any issue surviving. Jane Burlingham, another daughter of testator mentioned in the will, died February 23, 1947, leaving four children surviving her, namely: Mary B. Cort, Alice T. Dibble, Katherine L. Burlingham and Jane Ceppi. Mary B. Cort, aforementioned, died in 1957, and, as appears from letter hereto annexed, from Mr. Oestreich, she died intestate, a resident of Westerly, Rhode Island, leaving to survive her two daughters, Amelia Ann Cort and Patricia McDowell. Mary B. Cort having survived the expiration of the trust, her vested remainder interest will be awarded to her personal representative at her domicile, when appointed and qualified, subject to the provisions of section 1111 of the Fiduciaries Act of 1949. See Hazel Estate, 23 D. & C. 2d 344 (1961).

Mary C. P. Jenkins, testator's last surviving daughter, who died in 1955, left a will upon which letters testamentary were issued by the Register of Wills of Philadelphia to William C. Schwebel. She was survived by two grandchildren, William T. Jenkins and Elizabeth C. Jenkins Wagoner, children of her son, Clayton E. Jenkins, who died in 1954.

Annexed to the account are waivers by the preceding life-tenants of an accounting of income for the period prior to that stated in the account.

In his formal notice of the audit, counsel for accountant specified a question as to distribution of the principal, viz., should the two grandchildren of testator's daughter, Mary, take the share of their deceased father, Clayton, or should they share per capita with the four surviving children of testator's daughter Jane?

Admittedly, the will provides for equal distribution among issue of the first generation (i.e., the children of testator's three daughters) per capita. Such division is accepted by the distributees without controversy and supported by authority: Lenhart's Estate, 344 Pa. 358 (1942); Davis' Estate, 319 Pa. 215 (1935). But did testator by "issue" mean that all descendants of every degree of consanguinity should share alike per capita, as counsel for Mary's two grandchildren contends; or did he mean that the principal was to be divided equally among the then living children of the deceased life-tenants, and if a child was deceased, go per stirpes to its issue?

In Mayhew's Estate, 307 Pa. 84, 91 (1932), our Supreme Court held ". . . as a rule of construction that 'issue' prima facie is a word of purchase, and, in the absence of a contrary intention, children do not take concurrently with their parents but the division is per stirpes.

"Apart from anything else, the justice of a per stirpes distribution cannot be denied. Ordinarily, a testator in creating a life estate for one as the special object of his bounty (if that object is to continue within his special care) would next naturally consider only the immediate issue of such life-tenant, that is, his children. A parent's solicitation is usually para-

mount for his child, for grandchildren it is not so intent, and for great-grandchildren still further removed. Here, the testatrix provided for her daughter for life, and at her death she might naturally be expected to look after her daughter's children; but assuredly her inclination would not be to go to remoter degrees in search of beneficiaries, nor should any artificial rule of construction or any forced interpretation of the words she used carry the intent to that extent. We therefore agree with the growing majority of states which hold that where the word 'descendants' or 'issue' is unexplained in the context of the instrument, children do not take concurrently or per capita with their parents, but take per stirpes . . ."

The context of this will leads inevitably to the same conclusion. In the first clause of the controversial paragraph, "issue" is used in the sense of children in stating who shall receive income after the death of a daughter during the continuance of the trust. This clause is as follows: "But should any of my said daughters die leaving issue, said issue shall receive such share of the income of said estate as his, her or their mother would have taken if living . . ." Obviously, testator could refer with certainty only to his own daughters as *mothers*, for the parent of testator's greatgrandchild might well be a *father*. For this additional reason, the auditing judge is of the opinion that testator was thinking of his daughters' children as "issue" in the immediate sense, and, where such child was deceased, his or her share should descend per stirpes.

The share of Clayton, who died before the time fixed for distribution of principal, will be divided between his two children. In so holding, we are in complete accord with our learned colleague, the late Judge Hunter, whose opinion in Love Estate, 362 Pa. 105

(1949), was adopted per curiam by our Supreme
Court . . .

And now, May 24, 1961, the account is confirmed
nisi.