Before Klein, P. J., Bolger, Lefever, Saylor, Shoyer and Burke, JJ.

*Rodney T. Bonsall*, for accountant.

*Jerome R. Verlin*, guardian and trustee ad litem, and *Henry J. Morgan* and *Jerome B. Apfel*, for exceptants.

*Thomas F. J. MacAniff*, contra.

## ADJUDICATION

BOLGER, J., January 10, 1966.—By a deed of trust dated June 18, 1926, settlor, Lawrence Reese Fitzgerald, Sr., conveyed certain property to his trustees under the following terms and purposes:

"(A) To hold, manage, invest and reinvest the principal, to collect the income and profits therefrom, and

after deducting all necessary costs and charges to pay over the net income therefrom unto myself, the above Settlor, for and during the term of my natural life; and immediately upon my death IN TRUST to pay the net income thereof unto my three sons, LAWRENCE REESE FITZGERALD, JR., GEORGE CHILDS FITZGERALD, and WILLIAM PROUD FITZGERALD in equal shares, share and share alike, for and during the terms of their natural lives; and upon the death of each of my said sons leaving descendants him or them surviving, to pay over, assign and convey the principal of their respective shares, together with any accumulated income, to and amongst such descendants equally, or, if there be no such descendants, then to pay the net income of such deceased son's share unto his widow for and during the term of her natural life, or so long as she remains his widow; and immediately upon her death or remarriage, whichever event shall first occur, to hold or pay over said share as though the same had originally formed part of the shares of my other sons or descendants of deceased children, per stirpes, as the case may be".

Pursuant to the terms of the trust, the net income was paid by the trustees to settlor during his lifetime. Upon his death, the net income was divided into three equal shares and distributed among his sons for the remainder of their respective lives. Lawrence Reese Fitzgerald, Jr., died without issue on July 30, 1937, survived, however, by his widow, Ethel Fitzgerald, for whose benefit the trust continues.

William Proud Fitzgerald died on October 28, 1948, leaving issue. An account was filed, all interests were represented, and the account was confirmed absolutely by the adjudication of Ladner, J., dated March 15, 1949, which awarded the present fund to the accountant.

The last of settlor's three sons, George Childs Fitz-

gerald, died on April 19, 1965, for which reason this account is filed. He was survived by his son, George L. K. Fitzgerald, and by two daughters, Marie Fitzgerald Thompson and Isabelle Marie Fitzgerald. George L. K. Fitzgerald has two minor children, Marie Denise Fitzgerald and George L. Fitzgerald. Marie Fitzgerald Thompson has an adult daughter, Abigail Marie Ristine, who has two minor children, Sheri Marie and Richard. . .

By decree of the court dated September 16, 1965, Jerome Robert Verlin, Esq., was appointed guardian ad litem for designated minors and trustee ad litem for all unborn and unascertained interests. His report is annexed. In it, he objects to the manner of distribution proposed by the remaining trustee. The trustee proposes to distribute at this time one half of the corpus of the trust, in equal one-third shares, to the three adult children of the deceased life tenant. It is the opinion of the guardian that the trust instrument requires a per capita distribution to all the living issue of the deceased life tenant, including not merely his children, but also his grandchildren and great-grandchildren.

The indenture provides for the distribution of the share of principal attributable to a deceased life tenant who dies survived by descendants "to and amongst such descendants equally". In Mayhew's Estate, 307 Pa. 84 (1932), the Supreme Court of Pennsylvania stated that ". . . where a gift to 'descendants' or 'issue' is unexplained in the context of the instrument [a will], children do not take concurrently or per capita with their parents, but take per stirpes". See also Love Estate, 362 Pa. 105 (1949). This language is equally applicable to trust indentures. The question must then become whether the use of the word "equally" in the trust indenture explains the term "descendants", thereby removing it from the scope of the rule laid down in Mayhew's Estate, supra. The

term "equally" does not define the class, but only determines distribution within the class, once it is defined. "Descendants" is not defined in the trust instrument, but is impliedly defined by the rule in Mayhew's Estate. See Burleigh Estate, 405 Pa. 373 (1961), in which testator also used the word "equally". Mr. Chief Justice Bell said, at page 379; " 'Equally', prima facie, means as appellants contend, a per capita distribution among the heirs. However, appellants then admit, as they logically and under the authorities must—Love Estate, 362 Pa. 105, 66 A. 2d 238—that the word 'equally' means equally among heirs of the same class. . . ."

The auditing judge is mindful also of the following language in Mayhew's Estate, supra:

"Apart from anything else, the justice of a per stirpes distribution cannot be denied. Ordinarily, a testator in creating a life estate for one as the special object of his bounty (if that object is to continue within his special care) would next naturally consider only the immediate issue of such life-tenant, that is, his children. A parent's solicitation is usually paramount for his child, for grandchildren it is not so intent, and for great-grandchildren still further removed".

The auditing judge is further persuaded that a per stirpes distribution was intended in the present circumstances by the per stirpes distribution directed by settlor after the death or remarriage of a widow of a life tenant who has died without issue. An anomalous result would be reached if the present distribution were to be per capita and a future distribution upon the death of the present life tenant, the widow of Lawrence Reese Fitzgerald, Jr., were to be per stirpes. When taking the share of the trust attributable to their lineal ancestor (father, grandfather, or great-grandfather, as the case may be), the remaindermen would share equally without regard to relationship, but when

taking the share attributable to an uncle, granduncle or great-granduncle, the distribution would be per stirpes. This would be the result of the adoption by this court of the position taken by the guardian. It seems clear that settlor would not intend such an inconsistent result. Every effort is to be made to avoid inconsistency: Lefebvre v. D'Arcy, 236 Pa. 235 (1912). Therefore, that portion of principal to be distributed outright at this time will be awarded per stirpes, and not per capita. . .

OPINION SUR EXCEPTIONS TO ADJUDICATION

BURKE, J., May 13, 1966.—Settlor, by deed dated June 18, 1926, created a trust, reserving the income to himself for life, and upon his death provided:

"In Trust to pay the net income thereof unto my three sons, Lawrence Reese Fitzgerald, Jr., George Childs Fitzgerald and William Proud Fitzgerald in equal shares, share and share alike, for and during the terms of their natural lives; and upon the death of each of my said sons leaving descendants him or them surviving, to pay over, assign and convey the principal of their respective shares, together with any accumulated income, to and amongst such descendants equally, or, if there be no such descendants, then to pay the net income of such deceased son's share unto his widow for and during the term of her natural life, or so long as she remains his widow; and immediately upon her death or remarriage, whichever event shall first occur, to hold or pay over said share as though the same had originally formed part of the shares of my other sons or descendants of deceased children, per stirpes, as the case may be".

George Childs Fitzgerald, the last surviving son of settlor, died on April 19, 1965, and was survived by a son, George L. K. Fitzgerald, and two daughters, Marie Fitzgerald Thompson and Isabel Marie Fitzgerald. George L. K. Fitzgerald has two children who are

minors. Marie Fitzgerald Thompson has an adult daughter, who has two minor children.

The dispute centers on the distribution of the corpus which supported the income paid to settlor's son, George Childs Fitzgerald. The learned auditing judge, in his adjudication, awarded the principal per stirpes to his three children. Exceptants maintain that the distribution should have been made per capita to the three children, three grandchildren and two great-grandchildren.

Exceptants place great reliance on the use of the words "descendants" and "equally" in the indenture. We advert first to the word "descendants", which in the singular has been defined in legal dictionaries as an individual proceeding from an ancestor in any degree. This definition is not presently accepted in our decisional law, although followed in a few other jurisdictions.

In 4 Bowe-Parker: Page on Wills §34.23, p. 453, it is said:

"While in the earlier cases a gift to 'descendants' was to be divided equally among children, grandchildren, etc., it is now treated as equivalent to the heirs of the body or issue who would take under the law of descent and distribution, and grandchildren and remote descendants cannot take if their ancestors are living".

In Mayhew's Estate, 307 Pa. 84, 91 (1932), the Supreme Court, quoting with accord from Wyeth v. Crane, 342 Ill. 545, at page 91, said:

"In Wyeth v. Crane, supra, the word to be construed was 'descendants', which was held to be coextensive and synonymous with 'issue'. After an extended review of the authorities on both sides, the court concluded: 'We believe the correct rule to be that, where a grantor or testator makes a gift to "descendants" or "issue", unexplained by anything in the context of the instrument, children do not take concurrently or per capita with

their living parents, but take per stirpes,' so it may be safe to lay down as a rule of construction that 'issue' prima facie is a word of purchase, and, in the absence of a contrary intention, children do not take concurrently with their parents but the division is per stirpes".

The only deviation from the principle laid down in Mayhew, supra, would be an expression of a contrary intent. We have scrutinized the text of the one-sentence dispositive provision of the deed, and our search discloses no contrary intent such as would take the instant case out of the ruling in Mayhew.

Turning to the employment of the word "equally" as indicative of a per capita distribution, in Burleigh Estate, 405 Pa. 373, 379 (1961), the court said:

"The word 'equally' *as used herein* does not require a per capita distribution among *all* heirs. 'Equally' prima facie, means as appellants contend, a per capita distribution among the heirs. However, appellants then admit, as they logically and under the authorities must —Love Estate, 362 Pa. 105 . . .—that the word 'equally' means *equally among the heirs of the same class*, but the issue of a deceased member of that class would not take equally with the members of the first class, but would take per stirpes".

Exceptants cite Davis's Estate, 319 Pa. 215 (1935), and Craighead Estate, 2 D. & C. 2d 301 (1955), as authority for a per capita distribution of the instant fund. In both of these cited cases, separate gifts were made to two different classes.

In Davis's Estate, the income was given to a brother, and after his death, the principal was payable to two groups: (i) The children of testatrix' daughter, and (ii) the children of a brother. Further provision was made for the substitution of the issue of deceased children to take the share of their deceased parent's share.

The court decreed a per capita distribution to the

children, saying at page 217: " 'Where a gift is to the children of several persons, whether it be the children of A and B, or to the children of A and the children of B, they take per capita, not per stirpes.' True it was said further that '. . . this mode of construction will yield to a very faint glimpse of a different intention in the context' ".

In attempting to equate the instant case with Davis, exceptants predicate their view on the failure of the Davis testatrix to use a technical expression to impose a per stirpes distribution of the corpus. While it is true that the instant deed did not employ a technical word in disposing of the corpus on the death of a son, nevertheless no court has ever exacted the requirement that technical words must be used, even though testator's language is unambiguous. Therefore, Davis and Craighead are not apposite.

The current distribution relates solely to the construction of the deed applicable to the corpus on the deaths of each of settlor's sons. That part of the deed, we repeat, provides:

". . . and upon the death of each of my said sons leaving descendants him or them surviving, to pay over, assign and convey the principal of their respective shares, together with any accumulated income to and amongst such descendants equally, or, if there be no descendants. . ."

George Childs Fitzgerald was the last surviving son of settlor, and left descendants composed of children, grandchildren and great-grandchildren. Since we are bound by the ruling in Mayhew's Estate, supra, distribution is confined to the children of George Childs Fitzgerald, to the exclusion of the more remote relatives.

Settlor, in making the gift on the death of a son, had carved out three equal shares, one for each son, and provided for the distribution of the corpus supporting

the sons' income to his descendants, his children per Mayhew's Estate. The said language is self-executing and has the incidents of a stirpital distribution.

Although we are cognizant of the settled law that the intention must be gathered from the four corners of the instrument, since there is no ambiguity in the pertinent gift, no rules of construction can be invoked.

For the foregoing reasons, the exceptions are dismissed and the adjudication is confirmed absolutely.