## Bache Estate

*Henry C. Beerits*, for accountant.

*Seymour C. Wagner* and *Duane, Morris & Heck-scher*, *Victor J. Roberts* and *High, Swartz, Roberts & Seidel*, for beneficiaries.

*John J. Lombard, Jr.*, guardian ad litem.

*Murray B. Dolfman*, for Commonwealth.

KLEIN, P. J., January 22, 1968.—Thomas Hewson Bache died on July 8, 1912, leaving a will by which, inter alia, he left his residuary estate in trust to pay $160 per annum from the net income to each of his nephew, Franklin D. Bache and nieces, Margaret H. Bache, Emily H. Bache and Caroline D. Bache, and to pay the balance of the income in equal one-fifth shares to the said nephew and nieces, together with his niece, Henrietta D. Bache, for their respective lives, and upon the death of any of them to pay such share of income to his or her issue, per stirpes, until the death of the last survivor of his nephew and nieces. Upon the termination of the trust he directed that the sum of $4,000 be paid from principal, per stirpes, to the issue of his said nephew and of each of his nieces, Margaret H., Emily H. and Caroline D. Bache, and that the remaining principal should be paid to the then living issue of his said nephew and nieces, as more fully recited hereinafter. A copy of the will, certified by counsel to be a true copy, is annexed hereto.

The fund presently accounted for was awarded to the present accountant by adjudication of Burke, J.,

dated June 8, 1961, and the occasion of the filing of the present account was the termination of the trust by reason of the death of Emily H. Bache, last surviving life tenant . . .

The statement of proposed distribution requests the auditing judge to determine whether the balance of principal, presently distributable, should be distributed on a per stirpes basis or on a per capita basis, as the result of an ambiguity in the will which will be examined in detail hereinafter, that is, to the three children of Franklin D. Bache, stirpitally, or to 29 persons representing three generations of issue, on a per capita basis.

Three basic rules have been prescribed by our Supreme Court which must be observed in approaching cases involving construction of testamentary writings: (1) that testator's intent is the polestar and must prevail; (2) that the intent must be gathered from a consideration of all the language contained in the four corners of his will and not merely from isolated clauses or provisions thereof; and (3) that technical rules or canons of construction should be resorted to only if the language is ambiguous or conflicting or testator's intent is for any reason uncertain. See Dinkey Estate, 403 Pa. 179 (1961), and the many cases cited therein. See also Burleigh Estate, 405 Pa. 373 (1961); Vandergrift Estate, 406 Pa. 14 (1962). Other equally important and fundamental rules are that no will has a brother (Williamson's Estate, 302 Pa. 462 (1931); Lockhart's Estate, 306 Pa. 394 (1932)), and that precedents are of little value in the construction of wills because when used under different circumstances and in different contexts the same words may express different intentions. When the intent of testator, and by this is meant his actual intent, can be clearly gathered from his words, the fact that another testator has used the same words

with different meaning is of no avail: Redding v. Rice, 171 Pa. 301 (1895); Kirkpatrick's Estate, 280 Pa. 306 (1924); Emmerich Estate, 347 Pa. 307 (1943).

With these precepts in mind, let us examine item sixth of the will, which contains the crucial language which must be construed. This paragraph reads:

"*SIXTH:* Whereas, it is my desire and intention, in the distribution of my estate, to equalize, as far as possible, the share and portion which my nephew and nieces will each receive therein and whereas, I have heretofore given to my niece, Henrietta D. Bache, four thousand dollars.

"Now therefore, as to the residue and remainder of my estate, I give devise and bequeath all the said rest, residue, and remainder of my estate, both real and personal, of whatsoever kind and wheresoever situated, to Samuel Hinds Thomas of Philadelphia and to The Provident Life and Trust Company of Philadelphia to them and the Survivor of them, in fee simple, absolutely and forever, in trust nevertheless, to and for the following uses and purposes.

"In trust to let lease and demise the real estate hereby devised and to invest and keep invested the moneys and personal estate hereby bequeathed, in good and secure bonds and mortgages of real estate, in ground rents, or in some other safe and substantial securities and the same, from time to time, to call in, assign, sell, and dispose of and again invest as aforesaid, and to recover, collect and receive the rents, revenue, income, interest and profits thereof and, after deducting all taxes, and necessary repairs incident to the said trust estate and all reasonable costs, charges, and expenses attendant upon the execution of this trust, to pay out of the net income, when and as received, and not by anticipation, to my nephew and nieces; namely, Franklin Bache, Margaret H. Bache, Emily H. Bache and Caroline D. Bache, and *to the law-*

*ful issue* of such of my said nephew and nieces as may die; said issue to take their parents share *per stirpes and not per capita,* to each of said children or their issue the sum of one hundred and sixty dollars, being the income estimated at the rate of four per cent, upon the four thousand dollars heretofore bequeathed by me to my niece, Henrietta D. Bache; and after the payment of these several sums of one hundred and sixty dollars, to pay the balance of said net income, whatever it may be, in equal shares and portions to all the children of my deceased brothers; namely, Franklin Bache, Margaret H. Bache, Emily H. Bache, Henrietta D. Bache, and Caroline D. Bache, or to their lawful issue as aforesaid; until the death of the last surviving of my nephew and nieces who may be living at the time of my death.

"If, during the continuance of this trust, any of my nephew or nieces or their issue should die without leaving lawful issue to survive them; then the share of such nephew or niece or their issue, so dying, is to be paid to my surviving nephew or nieces or their lawful issue, share and share alike; but, *the issue in every case are to take per stirpes and not per capita.*

"Upon the death of the last surviving of my nephew and nieces who may be living at the time of my death, then in trust to distribute and divide the whole of my said estate among the lawful issue then surviving of my aforesaid nephew and nieces, as follows; first, to pay the sum of four thousand dollars to the lawful issue, if any there be, of each of my following nephew and nieces; namely, Franklin Bache, Margaret H. Bache, Emily H. Bache and Caroline D. Bache; *the issue, in each case, to take per stirpes and not per capita* and to distribute and divide the balance and remainder of my said estate, after the payment of these several sums of four thousand dollars, *in equal shares and portions among the lawful issue* then sur-

viving of all my nephew and nieces; namely, Franklin Bache, Margaret H. Bache, Emily H. Bache, Henrietta D. Bache, and Caroline D. Bache *per capita*". (Italics supplied)

It is to be noted that at three different places in this item, in disposing of both income and principal, testator specifically provided for a distribution "per stirpes and not per capita". When he reached the final distribution of the fund he said "in equal shares and portions among the lawful issue then surviving of all my nephews and nieces; namely, Franklin Bache, Margaret H. Bache, Emily H. Bache, Henrietta D. Bache, and Caroline D. Bache *per capita*". (Italics supplied.)

Testator's failure to prescribe a distribution that is "per stirpes and not per capita" at this juncture is most significant. It would certainly seem to indicate that he intended to change the stirpital plan of distribution he had directed up to the time of final distribution. This is further supported by his use of the phrase "in equal shares and portions". See Davis' Estate, 319 Pa. 215, 219 (1935); England Estate, 414 Pa. 115, 119 (1964).

The will is a carefully drawn instrument obviously prepared by a skilled draftsman. It must be assumed that testator understood the provisions of the instrument and that the language he used unequivocally expressed his carefully considered intentions. Why did testator depart from the words "per stirpes" and not "per capita" which he had used three times in this same section of the will when he came to the final distribution of the trust res? We cannot assume that it was omitted as the result of an oversight or mistake. Since it is obvious that he knew how to make a stirpital gift when he so intended, we must assume that he intended this gift to be per capita and thus give effect to the meaning of the plain language used by him. See Houston Estate, 32 D. & C. 2d 215 (1963),

affirmed 414 Pa. 579 (1964), in which testator made a series of gifts conditioned upon survivorship. In disposing of the balance of the remainder, this condition was omitted. The court held the gift to be vested because testator clearly demonstrated that he knew how to make a conditional gift when that was his intention.

Mr. Roberts, representing the guardian of the estate of Daniel Trigg Bache, one of the distributees, who is an incompetent, argued strenuously in favor of a stirpital distribution. He relies chiefly upon Mayhew's Estate, 307 Pa. 84 (1932), in which testatrix gave a life estate to her daughter and provided that "at her death the interest of my real estate goes to her issue". The auditing judge has examined this decision carefully and has concluded that it is inapposite.

In Houston Estate, supra, Mr. Chief Justice Bell said, at page 595:

"However, where a testator uses words which have a legal or technical meaning ' "they are to be so interpreted according to the law in effect at the testator's death unless the will contains a clearly expressed intention to the contrary" Farmers Trust Co., Executor v. Wilson et ux., 361 Pa. 43, 46, 63 A. 2d 14, and cases therein cited: Ashhurt's Estate, 133 Pa. Superior Ct. 526, 3 A. 2d 218; . . .' Collins Estate, 393 Pa. 195, 200, 142 A. 2d 178 . . . Brown Estate, 408 Pa. 214, 224, 183 A. 2d 307".

In our study of the Mayhew decision, we must bear in mind the fact that it was written in 1932, 20 years after the death of our decedent. What was the effect of the use of the word "issue" in Pennsylvania prior to 1932 where it was not explained in any manner? There can be no question as to the law in England, because in Mayhew, Mr. Justice (later Chief Justice) Kephart said, at page 88:

"The English decisions appear to be uniform that where 'issue' or 'descendants' is used unconfined by any indication of intention, children take concurrently and per capita with their parents: Leigh v. Norbury, 13 Ves. Jr. 340; Maddock v. Legg, 25 Beav. 531; In re Jones's Trusts, 23 Beav. 242; Freeman v. Parsley, 3 Ves. Jr. 421; Cancellor v. Cancellor, 2 Dr. & Smale 194; In re Burnham, Carrick v. Carrick (1918) 2 Ch. 196".

Apparently the English rule was also in effect in this State at the time. See Wistar v. Scott, 105 Pa. 200 (1884); Smith v. Coyle, 83 Pa. 242 (1877); Miller's Appeal, 52 Pa. 113 (1866); Gest v. Way, 2 Wharton 445 (1837). It seems, however, that the applicability of the rule was not free from doubt, because the court in Mayhew also said, at page 88:

"Here the word 'issue' is neither qualified, explained nor modified by any context, and this court must for the first time fully decide the construction to be given the word when used as it is in the will now before us".

After a careful analysis of the problem, the court rejected the English rule and directed a stirpital distribution. In reaching this conclusion, however, the court was careful to point out that in each case, testator's intention was paramount and must be gathered from the meaning of the language actually used in the will.

The uncertainty which existed in our law could readily explain why our testator was so careful to spell out with particularity when he desired a stirpital division and when he wanted the distribution to be made per capita.

In the present case, the meaning of the word "issue" can be readily ascertained by the context in which it is used and the other language found in the sixth item of the will. Testator's language is clear and his intention manifest. Hence, application of technical rules or

rules of construction is unnecessary and unwarranted. It seems quite clear to the auditing judge that testator intended a per capita and not a stirpital distribution of the remainder.

We, therefore, conclude that distribution is to be made in 29 equal shares per capita among all of the surviving descendants of testator's nephew and nieces. . . .

And now, January 22, 1968, the account is confirmed nisi.